Robert B. KIZER, Appellant

v.

STATE of Indiana, Appellee.

No. 284S71.

Supreme Court of Indiana.

Feb. 7, 1986.

Charles F. Leonard, Deputy Public Defender, Fort Wayne, for appellant.

Linley E. Pearson, Atty. Gen., Latrielalle Wheat, Deputy Atty. Gen., Indianapolis, for appellee.

DeBRULER, Justice.

This is a direct appeal from convictions of attempted rape, a class A felony, I.C. §§ 35–42–4–1 and 35–41–5–1; attempted child molesting, a class A felony, I.C. §§ 35–42–4–3(c) and 35–41–5–1; and criminal confinement, a class B felony, I.C. § 35–42–3–3. A jury tried the case. Appellant received a forty year sentence for attempted rape, a forty year sentence for attempted child molesting, and a ten year sentence for criminal confinement. All the sentences are concurrent.

Appellant raises three issues on appeal: (1) whether he received effective assistance of counsel; (2) whether the victim's incourt indentification of him was the product of impermissibly suggestive police procedures; and (3) whether there is sufficient evidence to support his convictions. We raise another issue sua sponte as fundamental error: whether attempted rape and attempted child molest as charged under the facts in this case are the same offense.

These are the facts from the record that tend to support the determination of guilt. On January 12, 1983, at approximately 6:45 a.m., fourteen-year old L.B. walked toward the intersection of Pontiac and Bowser in Fort Wayne where she intended to board a school bus. Appellant started walking beside her, attempting to make conversation. As they passed a narrow walkway between two buildings, he pushed her into it. Then, he threatened her with a knife, forced her to lie on her back, and partially removed her slacks. At this point, appellant and the victim saw two police cars. Consequently, appellant ran from the scene. The victim ran to the officers for assistance.

I

Appellant argues that his trial counsel was ineffective. He contends that trial counsel erred in not calling Officer William Smith to testify on his behalf and in not requesting that the jury be sequestered.

These guidelines are to be followed when reviewing ineffective assistance claims.

"The proper standard for attorney performance is that of reasonably effective assistance. * * * Judicial scrutiny of counsel's performance must be highly deferential. * * * * * the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. * * * A * * * claim * * * has two components. First the defendant must show that counsel's performance was deficient. * * * Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v. Washington* (1984) 466 U.S. 668, 104 S.Ct. 2052, 2064, 2065, 80 L.Ed.2d 674.

Appellant claims Officer Smith's testimony would have contradicted the two other police officers' testimony that appellant appeared to be freshly shaven when they first contacted him about the attack on the victim. Appellant argues that counsel was deficient in not discovering Officer Smith's testimony and in not calling Officer Smith to testify on his behalf. Appellant has attempted to rely upon facts not shown by the record or by affidavits attached to his motion to correct errors. T.R. 59(H)(1) states:

When a motion to correct error is based upon evidence outside the record, the Motion shall be supported by affidavits showing, the truth of the grounds set out in the motion and the affidavits shall be served with the motion.

C.R. 16 incorporates T.R. 59 into criminal proceedings"... insofar as applicable and when not in conflict with any specific rule adopted by this court for the conduct of criminal procedure." *See also Pettit v. State* (1979), 272 Ind. 143, 396 N.E.2d 126.

■ Officer Smith's deposition appears to have been taken; however, it is not in the record, nor is it in the form of an

affidavit attached to the Motion to Correct Errors. The only indication as to the content of Officer Smith's possible testimony is in appellant's Exhibit A of his Motion to Correct Errors. However, this is an unsigned document attached to an unverified Motion to Correct Errors, and is not sufficiently probative of Smith's possible testimony. Under these circumstances, the record is insufficient as a basis upon which to evaluate trial counsel's performance.

■ Appellant also claims that trial counsel was deficient in not requesting the jury to be sequestered to prevent them from reading newspaper accounts of the trial. The trial lasted two days. At the beginning of the trial, the jurors were instructed as follows:

> There may be publicity in newspapers, on radio or on television concerning this trial. You should not read or listen to these accounts but should confine your attention to the court proceedings, listen attentively to the evidence as it comes from the witnesses, and reach, a verdict solely upon what you hear and see in this court.

Even if trial counsel's inaction were considered deficient, no demonstration has been made that it prejudiced the defense. No incidents of juror impropriety are shown to have occurred, nor are any newspaper accounts of the trial before us. There is no rational deduction to be made from the fact that the jurors were not sequestered, that they read newspaper accounts of the trial. Indeed, the law indulges the opposite deduction, in non-capital cases, i.e. that the jurors followed their instructions and restricted their reading.

On the basis of these contentions, counsel's performance in presenting the defense cannot be evaluated as having been less than reasonably effective.

## II

Appellant argues that the victim's in-court identification of him was the product of impermissibly suggestive police procedures. The basis of his objection at trial was that the show-up was unnecessarily suggestive, and as a result, it tainted all subsequent identifications, including the one in-court.

Evidence of positive pre-trial identifications of the accused by witnesses to a crime is inadmissible as inconsistent with the requirements of due process of law if it is the product of police procedures which are unduly and unnecessarily suggestive of guilt and create a substantial likelihood of irreparable misidentification. *Neil v. Biggers* (1972), 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401; *Parker v. State* (1981), Ind. [275 Ind. 142], 415 N.E.2d 709. Furthermore, direct evidence at trial by witnesses subjected to such condemned procedures is also inadmissible unless a basis, independent of such procedures as gleaned from a totality of the circumstances, supports it. *Foster v. California* (1969), 394 U.S. 440, 89 S.Ct. 1127, 22 L.Ed.2d 402; *Swope v. State* (1975), 263 Ind. 148, 325 N.E.2d 193.

*Ingram v. State* (1981), Ind., 421 N.E.2d. 1103.

These are the facts from the record pertinent to the issue. The attack on the victim occurred at 6:45 a.m., January 12, 1983. Immediately after the attack, Police Officer showed her several photographs, none of which were appellant's; she did not select any photograph as that of her attacker. At approximately 9:45 a.m. Officer Wilson took the victim to an address on Leigh Street. Officers brought Appellant from the house to the curb so that the victim could observe him. When asked whether that was the man, she replied "I'm not sure." She explained that the man who had attacked her "had sideburns that went into a beard and moustache" whereas appellant was clean shaven, and was not dressed the same way as the person who attacked her. She went on in her testimony to describe her feelings at the time of this confrontation.

Q Were you frightened at this time?

A Yes

Q Why were you frightened?

A Because I didn't want to pick the wrong person, or anything, and I was scared of whoever he was, that he would probably see me and know that I picked the wrong person.

Officers present at the time testified that appellant appeared to be freshly shaven. It is thus reasonable to regard her unsure state of mind at this time to be the product of fear and the fact that the man before her lacked the distinctive facial hair.

On January 17, 1983, Detective Alfeld showed the victim a photo array consisting of seven color photographs. She selected appellant's photograph as her attacker; however, she stated that she was not positive. Appellant in this photograph had sideburns which were trimmed as to connect with a mustache and goatee.

On January 28, 1983, Detective Alfeld showed the victim a photo array consisting of nine color photographs. She selected appellant's photograph as her attacker; this time she was positive. On that same date, Detective Alfeld showed her another photo array consisting of five black and white photographs. She selected appellant's photograph again. On February 2, 1983, the police conducted a line-up at the request of defense counsel. Appellant assisted in selecting the participants. The victim viewed the line-up in three different sequences, and she selected appellant as her attacker each time.

■ From the record before us, we are unable to discern if appellant was in police custody at the time of the show-up as contemplated in *McPhearson v. State* (1970), 253 Ind. 254, 253 N.E.2d 226 or not under police custody as contemplated in *Zion v. State* (1977), 266 Ind. 563, 365 N.E.2d 766. Nevertheless, even if the one-on-one confrontation staged by the police here could not be justified under the reasoning of those cases, and was therefore unnessarily suggestive, we do not believe that it tainted subsequent identifications. The show-up on the street did not result in a firm identification of appellant as her assailant, and the victim did not abandon her recollection of her assailant as having had distinctive facial hair throughout the subsequent identification procedures.

■ Finally, in spite of the previous discussion, there was a sufficient independent basis to support the in-court identification. The victim recognized appellant as the same man she had observed in the general vicinity of the attack on the day before the attack. On the day of the attack, appellant walked beside the victim for several blocks, attempting to make conversation. Although still dark, the street lights made it possible for the victim to observe the scar on appellant's brow and his droopy eyes. Immediately after the attack, she gave the police officers a description of appellant, including his height and his long side burns and his mustache.

### III

■ Appellant contends that there was insufficient evidence to support his convictions. The kernel of this claim is that the evidence was insufficient to identify him as the assailant, and also insufficient to show an intent to have sexual intercourse. In determining this question we do not weigh the evidence nor resolve questions of credibility but look to the evidence and reasonable inferences therefrom which support the verdict. *Smith v. State* (1970), 254 Ind. 401, 260 N.E.2d 558. The conviction will be affirmed if from that viewpoint there is evidence of probative value from which a reasonable trier of fact could infer that appellant was guilty beyond a reasonable doubt. *Glover v. State* (1970), 253 Ind. 536, 255 N.E.2d 657. The testimony of the victim at trial pointing out appellant as her assailant was sufficient to show identification, and her testimony that appellant forced her at knife point to remove her jacket and place it on the ground and to lie upon it on her back, and that appellant forced her to commence removing her pants was sufficient to show his intent to have sexual intercourse.

### IV

■ The State charged appellant with one count of attempted class A rape and

one count of attempted class A child molesting. Both convictions are based upon the same conduct of appellant toward sexual intercourse, the same harm to the victim, and the same short span of time as attacker and victim struggled between the two buildings. Upon analysis we conclude that these two offenses are the same offense and thus one of the convictions must fall before the prohibition in the double jeopardy clause against multiple punishment for the same offense.

The statutes are set forth here:

35–42–4–1. Rape. (a) A person who knowingly or intentionally has sexual intercourse with a member of the opposite sex when:

(1) The other person is compelled by force or imminent threat of force; commits rape, a class B felony. However, the offense is a class A felony if it is committed while armed with a deadly weapon, or if it results in serious bodily injury to any person other than a defendant.

35–42–4–3. Child molesting. (c) A person sixteen (16) years of age or older who, with a child of twelve (12) years of age or older but under sixteen (16) years of age, performs or submits to sexual intercourse or deviate sexual conduct commits child molesting, a class C felony. However, the offense is a class A felony if it is committed by using or threatening the use of deadly force, or while armed with a deadly weapon.

The charging informations are set forth here:

Robert B. Kizer did knowingly or intentionally attempt to commit the crime of Rape with L.B. f/b/14, dob: 2/9/68, by dragging said between two buildings at Pontiac & John Streets while armed with a deadly weapon, to wit; a knife and pulling her slacks down and throwing her to the ground, said L.B. being of the opposite sex, which conduct constituted a substantial step toward the commission of said crime of Rape ...

Robert B. Kizer being at least sixteen (16) years of age, did attempt to commit the crime of Child Molesting, to wit: attempt to perform sexual intercourse with L.B. f/b/14 dob: 2/9/68, while armed with a deadly weapon, to wit: a knife, said L.B. being a child over the age of twelve (12) but under the age of sixteen (16) years of age, which conduct constituted a substantial step toward the commission of said crime of Child Molesting ...

Both of these offenses as manifested in the pertinent language of the statutes and the language of the charging instruments, are aimed at punishing the conduct of an adult male toward achieving nonconsensual sexual intercourse. In the rape case, the nonconsensual goal is to be proved by evidence of compulsion through force or imminent threat of force. In the molesting case, such nonconsensual goal is to be proved by evidence that the victim is under sixteen years of age and has no capacity to consent.

The difference of importance between I.C. §§ 35–42–4–1 and 35–42–4–3 (c) is the manner in which this common quantity must be proved. This procedural difference does not render the two offenses substantively different in the double jeopardy context. From this viewpoint we do not regard proof of age and proof of force as constituting proof of additional and separate "facts" defeating a conclusion of sameness. *Elmore v. State* (1978), 269 Ind. 532, 382 N.E.2d 893.

We do not find this holding to be contrary to the one adopted in *Snider v. State* (1981), 274 Ind. 401, 412 N.E.2d 230. There we permitted incest and child molesting sentences to stand which were based upon the nonconsensual intercourse between a stepfather and his stepdaughter who was under twelve years of age. Incest is an assault upon the family relationship as well as the individual. It therefore has a character foreign to the relationship between male and female implicated when nonconsensual intercourse occurs.

The attempted rape and confinement convictions are affirmed. However, the attempted child molesting conviction and sen-

tence are ordered vacated by the trial court.

GIVAN, C.J., and PIVARNIK, SHEP-ARD and DICKSON, JJ., concur.