**STATE of Indiana, Appellant–Plaintiff,**

**v.**

**Barry CHANDLER, Appellee–Defendant.**

**No. 49A05–9601–CR–35.**

Court of Appeals of Indiana.

Nov. 12, 1996.

Pamela Carter, Attorney General, Lisa M. Paunicka, Deputy Attorney General, Indianapolis, for Appellant–Plaintiff.

## OPINION

FRIEDLANDER, Judge.

Upon interlocutory appeal, the State challenges the trial court's setting aside of a jury verdict finding Barry Chandler guilty of child molesting, a class B felony. The State presents the following restated issue for review:

> Did the trial court err in setting aside the guilty verdict on the basis that the court refused to grant the jury's request during deliberations to view anatomical drawings that had been admitted into evidence?

We reverse and remand.

Chandler was charged with molesting A.W., a six-year-old girl. Chandler had been married to A.W.'s mother but the two were divorced when the alleged molestation occurred. According to A.W., on an overnight visit to Chandler's house, she was awakened by Chandler when he placed his hand over her mouth. Chandler then disrobed, removed some of A.W.'s clothing, and forcibly performed sexual intercourse upon A.W. Afterwards, Chandler warned A.W. not to tell anyone what had happened or he would harm A.W.'s mother and sister.

A.W. eventually reported the incident to a babysitter, saying that a man "had touched her in a wrong way." *Record* at 345. The babysitter notified A.W.'s grandmother and the grandmother contacted the police. The police questioned Chandler, who denied any wrongdoing. After an investigation, Chandler was charged with child molesting and the case proceeded to a jury trial. The State presented several witnesses, including A.W., her grandmother, and the babysitter. The State also presented the testimony of Dr. Roberta Ann Hibbard, a pediatrician who

examined A.W. after the alleged molestation occurred.

During Dr. Hibbard's testimony, the State introduced Exhibits 1 and 2, charts depicting female genitalia from different angles. The charts were introduced for demonstrative purposes and Dr. Hibbard referred to the charts while describing female genitalia generally and A.W.'s genitalia specifically. When asked to describe the results of A.W.'s examination and her conclusions, Dr. Hibbard testified:

> For a child of this age, uh, and actually for a child, almost any child who is yet still prepubertal, before they have gone though puberty and are having periods, we consider the upper limits of normal [for the hymenal opening] to be 9 to 10 millimeters, and I say 9 to 10, because if you look at a 7–year–old, the absolute number is going to be, you know, 8.7, and if you look at an 8–year–old, it's 9.2, and if you look at a 9–year–old it's ... I personally use the limit of 10 millimeters, to give us a little bit of leeway, because there could be varying degrees of relaxation.

*Record* at 291. Dr. Hibbard then testified that A.W.'s hymenal opening measured thirteen millimeters. According to Dr. Hibbard, a thirteen-millimeter opening was "well beyond ... the normal range for a child of [A.W.'s] age," *id.* at 292, and was "suspicious for sexual abuse." *Id.* at 294–95.

After beginning its deliberations, the jury sent the following note to the court: "Could we please have medical drawings and a ruler?" *Id.* at 89. After receiving the note, the court summoned counsel and Chandler back into court, and the following colloquy ensued:

> THE COURT: All right, Mrs. Hillenburg [the prosecuting attorney] any suggested response?
>
> MRS. HILLENBURG: No, I think the Court's response, re-reading the instructions is ... complies with the law, and should get them back on the track.
>
> THE COURT: Mr. Ortiz [defense counsel]?
>
> MR. ORTIZ: I agree.

> THE COURT: So, if we respond, "Reread instructions and please continue to deliberate," is there any objection to that?
>
> MRS. HILLENBURG: No.
>
> THE COURT: Mr. Ortiz?
>
> MR. ORTIZ: Not unless ... not unless they come back later on and say that they are confused or something like that.
>
> THE COURT: Okay, but as to this particular note?
>
> MR. ORTIZ: As to this, right now, that's the only thing we can do.

*Record* at 548–49. The court then responded to the jury as indicated. The jury deliberated for several hours after receiving the response and returned a verdict of guilty.

Before sentencing, Chandler submitted a motion to set aside the verdict on grounds of jury misconduct. Chandler alleged that the jury conducted unauthorized experiments during deliberations and utilized extrinsic materials not admitted into evidence in doing so. After a hearing, the court granted the motion. Because they reveal the trial court's rationale for granting the petition to set aside the verdict, we reproduce the comments of the court that accompanied the ruling:

> Mr. Ortiz, Court hesitates to set aside a jury's verdict because the jury's verdict is so sacred. So, in this case I certainly can't find anything where they were influenced in any way. But, the concern that I have and I've had in other cases, Mrs. Hillenburg, Mr. Ortiz brings out their request for the medical drawings and a ruler. While [Mr. Ortiz] emphasizes the ruler, and I don't agree with that because it was not evidence [sic]. I have some real concern that we did not give the medical drawings to the jurors. That's because of Indiana Code 34–1–21–6 which says that after the jury have retired for deliberation, if there's a disagreement between them as to any part of the testimony, or if they desire to be informed as to any point of law arising in the case, they may request the officer to conduct them into court where the information required shall be given in the presence of or after notice to the parties or their attorneys. Now, I know that this is not a point of law, so they

are not asking to be informed on a point of law. And, they did not express a disagreement between them as to the medical drawings. But, Mrs. Hillenburg I've had so much trouble with this ... with justifying this because we don't have jurors that come right out and say we have a disagreement, we need to re-see the evidence. I almost think that when they ask for something, it's as if they do disagree or they don't understand it. That's been my concern for a long time in all these cases, in similar cases. And while I'm very hesitant to set aside a jury's verdict, I'm afraid that that's a court error that may indeed be prejudicial.

*Record* at 596–99. The trial court subsequently granted the State's Petition to Certify for Interlocutory Appeal and this appeal ensued.

This appeal involves the application of Ind. Code Ann. § 34–1–21–6 (West 1983), which governs jury requests for information submitted after deliberations have begun. The statute provides:

After the jury have retired for deliberation, if there is a disagreement between them as to any part of the testimony, or if they desire to be informed as to any point of law arising in the case, they may request the officer to conduct them into court, where the information required shall be given in the presence of, or after notice to, the parties or their attorneys.

In setting aside the verdict, the trial court appears to have concluded that IC § 34–1–21–6 requires the court to conduct the jury back into court and give them the requested information *any time* a jury makes a request to review evidence during deliberation. This view is erroneous.

■ We note that, after receiving the jury request, the court summoned counsel to discuss an appropriate response. The court specifically asked defense counsel's views upon the proposed response of simply telling the jury to re-read the instructions and continue to deliberate. Counsel agreed that

such a response was appropriate. Therefore, even assuming for the sake of argument that error was committed, Chandler invited the error. Although a violation of IC § 34–1–21–6 may constitute fundamental error in some circumstances,[1] this is not such a circumstance and the error, if any, does not amount to constitutional error. *Cade v. State*, 590 N.E.2d 624 (Ind.Ct.App.1992). Therefore, Chandler waived the error by agreeing to the court's proposed response. Although we have determined that the issue was waived, we will nevertheless address the merits of Chandler's motion to set aside.

IC § 34–1–21–6 divests a trial court of discretion to deny a jury request made during deliberations in only two situations. First, if a jury expresses disagreement, the trial court must read to the jury, in the manner prescribed by the statute, any properly admitted testimony or documentary evidence requested by the jury. Second, the court must advise the jury as to a point of law if the jury so requests. IC § 34–1–21–6 applies in the instant case, if at all, because it fits within the first category.

The trial court's comments reflect its view that IC § 34–1–21–6 applies *whenever* a jury requests evidence. Yet, the statute provides that there must be a triggering event, i.e., a disagreement between jurors as to any part of the testimony, before the procedural protections set out in the statute apply. In *Cade*, this court examined *Survance v. State*, 465 N.E.2d 1076 (Ind.1984) and concluded that "*Survance* shows us that a genuine disagreement about the evidence must exist", *Cade*, 590 N.E.2d at 625, in order to bring a jury request to review evidence within the mandatory provisions of IC § 34–1–21–6. *See also Grayson v. State*, 593 N.E.2d 1200, 1206 (Ind.Ct.App.1992) (IC § 34–1–21–6 is implicated only when "the jury manifests disagreement about the testimony or seeks clarification on legal issues").

■ In the instant case, the jury's request was devoid of any indication that the request stemmed from disagreement as to testimony

---

1. For example, in *Powell v. State,* 644 N.E.2d 855 (Ind.1994), our supreme court determined that a court commits fundamental error if it sends evidence to the jury over a defendant's objection after deliberations have begun, because such violates the defendant's substantial right to be present when the jury interrupts its deliberations to review evidence.

or confusion as to a point of law. Chandler's counsel acknowledged as much during the discussion about the court's response to the note when he stated that the response was appropriate, "unless they come back later on and say that they are confused or something like that." *Record* at 549.

Absent indications of jury disagreement or confusion, the mandatory provisions of IC § 34–1–21–6 were not triggered and the trial court was not required to grant the jury's request to review Exhibits 1 and 2. *Cade,* 590 N.E.2d at 625; *see also Grayson,* 593 N.E.2d at 1206 ("We refuse ... to require trial courts to question juries about whether they are in disagreement when there is no indication that they are.") Accordingly, the trial court erred in setting aside the verdict on the stated grounds. We reverse and remand with instructions to reinstate the jury verdict.

Judgment reversed and jury verdict reinstated.

BARTEAU, J., concurs.

SULLIVAN, J., concurs with separate opinion.

SULLIVAN, Judge, concurring.

Not only did Chandler agree to the trial court's rejection of the jury request to view the anatomical drawings but he did not assert that ruling as a basis for his Motion to Set Aside the Verdict. That motion was premised solely upon the assertion that during deliberations, the jury utilized extrinsic materials which were not admitted into evidence. For this reason, I agree that Chandler has not shown entitlement to reversal of the ruling.

The trial court in setting aside the verdict apparently equated the denial of the jury request for the drawings with fundamental error. I write separately in this regard in order to express my similar reservations concerning the "disagreement" trigger to application of I.C. 34–1–21–6. As noted by the majority, the trial court stated that

> we don't have jurors that come right out and say we have a disagreement, we need to re-see the evidence. I almost think that

when they ask for something, it's as if they do disagree or they don't understand it. Op. at 484. I believe the trial court accurately pinpointed the realities of jury deliberative activity. Although belatedly, the trial court here concluded the jury had expressed an uncertainty as to the evidence sufficient to fall within a fair construction of the statute. Had the court reached that conclusion when the jury request was received, the exhibits would have been reviewed by the jury in open court. That would have been patently permissible.

To the extent, however, that the trial court felt compelled to set aside the verdict and grant a new trial, I disagree. Under all of the circumstances and in light of the fact that the exhibits were used solely as an aid to the medical testimony, the initial ruling did not constitute fundamental error and did not justify setting aside the verdict.

For these reasons I concur in the reversal of the trial court's ruling.