Guy ROBERTS, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 47A01–9804–CR–152.

Court of Appeals of Indiana.

June 30, 1999.

Transfer Denied Aug. 31, 1999.

Susan K. Carpenter, Public Defender of Indiana, Gregory L. Lewis, Deputy Public Defender, Indianapolis, Indiana, Attorneys for Appellant.

Jeffrey A. Modisett, Attorney General of Indiana, Rosemary Borek, Deputy Attorney General, Indianapolis, Indiana, Attorneys for Appellee.

## OPINION

BROOK, Judge

### Case Summary

Appellant-defendant Guy Roberts ("Roberts") appeals from his convictions for rape as a Class B felony, two counts of child molesting as Class C felonies, and child molesting as a Class D felony.

### Facts and Procedural History

The facts most favorable to the judgment indicate that Roberts lived with Donna Sykes ("Sykes") and her two children, M.G. and S.G., in Bedford, Indiana, from October 1991 until June 1992. In May 1992, M.G., who was 12 years old, stayed home from school because she was ill. While M.G. lay on the couch in the living room watching television, Roberts approached her. He knelt on the floor beside M.G., touched her breasts, tried to kiss her, and tried to put his hands down her pants. As they struggled on the couch, M.G. told Roberts to leave her alone; he refused. She then kicked him and again told him to leave her alone. Because M.G. resisted his advances, Roberts retreated and started calling her names, such as "whore" and "slut."

Roberts returned to the couch, grabbed M.G. by her arms, and threw her onto the floor. Roberts then got on the floor with M.G. and removed her clothing. Holding her arms down to prevent her escape, Roberts forced M.G. to engage in sexual intercourse. After the attack, he threatened to kill her if she told Sykes what had happened. Also, on a separate occasion, in May 1992, Roberts entered M.G.'s bedroom while she slept and awakened her. When M.G. awoke, she discovered Roberts touching her breasts and putting his hand down her underpants. She told him to leave her alone and get out of her bedroom; he complied. M.G. never reported either of these incidents to her mother or anyone else because she was embarrassed and afraid that Roberts would harm her.

In June 1992, when Roberts and Sykes ended their relationship, Roberts moved out of the house. On June 23, 1992, M.G. told her mother that Roberts had gotten into her bed and touched her breasts and inserted his fingers into her vagina. On June 24, 1992, Sykes took M.G. to the Lawrence County Welfare Department ("Welfare Department") to report the incident. Although M.G. reported that Roberts had touched her, she did not inform them that she had been raped. After the Welfare Department took their report, M.G. was sent to Dr. Mike Borhan ("Dr.Borhan") to receive a pelvic examination. She told Dr. Borhan that Roberts had inserted his fingers into her vagina, but denied any penile penetration.

On July 8, 1992, the State filed an information against Roberts for child molesting as a

Class C felony, alleging that he had performed sexual deviate conduct upon M.G. On July 10, 1992, Deputy Kathy Robinson ("Deputy Robinson") of the Lawrence County Sheriff's Department interviewed M.G. on videotape. M.G. repeated her allegations that Roberts had touched her, but denied that Roberts had sexual intercourse with her. M.G. reported that Roberts had touched her on two separate occasions: once on the living room couch when he allegedly inserted his finger into her vagina, touched her breasts, and tried to kiss her; and once in her bedroom when he allegedly touched her breasts. On March 5, 1993, the State filed an amended information that added another charge of child molesting as a Class D felony, alleging that Roberts had fondled M.G. with the intent to arouse or satisfy his sexual desires. On October 30, 1995, the State again requested leave to amend the information to add eight other allegations of child molesting involving a different victim, which was granted on December 1, 1995.[1]

While these charges were still pending, Roberts failed to appear for a pretrial conference on December 20, 1995. As a result, the court issued a bench warrant for Roberts' arrest. The trial court took no further action on this matter until Roberts was apprehended in Canton, Georgia, and returned to Indiana on February 28, 1997. On May 30, 1997, the trial court set the date for a jury trial on November 5, 1997.

On July 3, 1997, M.G. disclosed for the first time that Roberts had raped her in May 1992. On July 9, 1997, the State moved to amend the information previously filed to add a count of rape and another count of child molesting for this alleged act of sexual intercourse. The trial court granted the State's motion to amend. The amended information read as follows: Count I, Rape as a Class B felony; Count II, Child Molesting as a Class C felony for sexual intercourse with M.G.; Count III, Child Molesting as a Class C felony for sexual deviate conduct; and Count IV, Child Molesting as a Class D felony for fondling M.G. with the intent to arouse or

satisfy his sexual desires. On July 18, 1997, the State filed another amended information that added a count regarding Roberts' failure to appear.

On August 14, 1997, Roberts filed a motion to dismiss the rape and Count II child molesting charges of the amended information. Roberts argued that the rape and child molesting charges were time barred because they were filed after the expiration of the five-year statute of limitation. The trial court denied Roberts' motion to dismiss, ruling that his absence from Indiana had tolled the period of limitation.

On November 5, 1997, a jury trial commenced. At the end of the State's case-in-chief, Roberts again moved to have the rape and child molesting charges dismissed because they were filed after the five-year statute of limitation had expired; the trial court denied this motion. During Roberts' direct examination of Deputy Robinson, he offered into evidence the July 10, 1992, videotaped interview of M.G., during which she had denied that Roberts had sexual intercourse with her. The trial court excluded the videotape, reasoning that M.G. had already admitted making the inconsistent statements; therefore, the videotape was not admissible.

Roberts testified in his own defense. During his cross-examination, the prosecutor elicited testimony, without defense objection, about the techniques Roberts had used to slaughter cows at the butcher shop where he worked. The prosecutor then asked him whether he had ever killed any animals in front of M.G. and her sister. The defense objected to this line of questioning. The trial court sustained Roberts' objection; however, Roberts did not request a mistrial or ask for an admonishment to the jury.

During jury deliberations, the jury sent a note to the court requesting to view Roberts' employment calendar, a copy of Dr. Borhan's testimony, and Dr. Borhan's medical chart. Because Dr. Borhan's testimony had not yet been transcribed and the medical chart had never been admitted into evidence, the trial court proposed sending Roberts' employment

---

1. On December 12, 1997, Roberts filed a petition to sever the eight additional felony counts. On May 30, 1997, the trial court granted his petition to sever the eight counts of child molesting unrelated to M.G.

calendar and M.G.'s school attendance records to the jury, without otherwise responding to the request. Roberts' objection to sending this information to the jury was overruled by the trial court. After overruling the objection, the trial court asked the parties whether the two exhibits should be shown to the jurors in open court or if the bailiff should take them into the jury room. Both parties consented to the exhibits being taken to the jury room.

On November 6, 1997, the jury returned a guilty verdict for all four counts. The trial court sentenced Roberts to consecutive sentences of twenty years for rape; eight years for each child molesting charge as a Class C felony; and four years for the child molesting charge as a Class D felony.

### Issues

Roberts raises four issues for our review, which we rephrase as follows:

(1) whether Roberts' convictions for rape and child molesting arising out of the same act of sexual intercourse constitute double jeopardy in violation of the Fifth and Fourteenth Amendments to the United States Constitution and Article I § 14 of the Indiana Constitution;

(2) whether Roberts' convictions for rape and child molesting are barred pursuant to Indiana's five-year statute of limitation as set forth in IND. CODE § 35–41–4–2;

(3) whether the trial court erred in excluding a videotaped interview of the victim during which she denied having sexual intercourse with Roberts; and

(4) whether Roberts was denied effective assistance of trial counsel.

### Discussion and Decision

### I. Federal and Indiana Double Jeopardy Standards

■ First, Roberts argues that the trial court violated the double jeopardy prohibitions of the Fifth Amendment of the United States Constitution [2] and Article I § 14 of the Indiana Constitution. Double jeopardy protects "against successive prosecutions following conviction, reprosecution after acquittal, and multiple punishments for the same offense." *Games v. State*, 684 N.E.2d 466, 479 (Ind.1997), *opinion modified on other grounds*, 690 N.E.2d 211 (Ind.1997), *cert. denied*, —— U.S. ——, 119 S.Ct. 98, 142 L.Ed.2d 78 (1998), citing *North Carolina v. Pearce*, 395 U.S. 711; 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). Roberts contends that his convictions for the rape and Count II child molesting charges violate the prohibition against multiple punishments for the same offense because they arose from the same act of sexual intercourse.

The analyses for double jeopardy claims arising under both the Indiana and United States Constitutions were the same until recently. However, in both *Games* and *Grinstead v. State*, 684 N.E.2d 482 (Ind.1997), our supreme court recognized that the previous interpretation of the federal double jeopardy clause, which looked beyond the statutory elements, had changed and that the proper test to determine whether double jeopardy had been violated was articulated in *Blockburger v. United States*, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932). *Games*, 684 N.E.2d at 474; *Grinstead*, 684 N.E.2d at 486.

■ In analyzing a federal double jeopardy question under *Blockburger*, this Court must first determine whether the legislature intended to impose multiple punishments for a single act. *Games*, 684 N.E.2d at 474. Where the legislative intent is clear that multiple punishment is intended, double jeopardy is not violated and further inquiry into the statutory elements is not appropriate. *Id.* However, when the legislative intent to impose multiple punishments is uncertain, a comparison of the statutory provisions at issue is required. *Id.* "The applicable rule is that, where the same transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of an additional fact which the other does not."

2. The double jeopardy clause of the Fifth Amendment is applicable to the State of Indiana through the due process clause of the Fourteenth Amendment to the U.S. Constitution. *Buie v.*

*State*, 633 N.E.2d 250, 259 (Ind.1994), citing *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

*Id.* at 475, quoting *Blockburger,* 284 U.S. at 304, 52 S.Ct. at 182, 76 L.Ed. at 309. The supreme court further held that the determination of whether the defendant's conduct constitutes more than one offense is to be made by *examining only the statutory elements comprising the offenses* without regard to the manner in which the offenses were charged; the jury was instructed; or the nature of the underlying proof necessary to prove the elements. *Games,* 684 N.E.2d at 477 (emphasis supplied).

■ However, the supreme court limited the *Games* and *Grinstead* decisions to a discussion of Indiana's application of federal law, leaving for another day the question of whether double jeopardy claims arising under Article I § 14 of the Indiana Constitution are entitled to an analysis separate and distinct from the federal constitution. *Games,* 684 N.E.2d at 473, n. 7; *Grinstead,* 684 N.E.2d at 485–486.[3] Indiana has a more stringent double jeopardy analysis that goes beyond the simple evaluation and comparison of statutory provisions under the *Blockburger* test; the court must also examine the manner in which the State actually charged the offenses to ascertain whether a single act constituted the basis for multiple punishment. *Jewell v. State,* 672 N.E.2d 417, 427 (Ind.Ct.App.1996), *trans. denied. See Smith v. State,* 655 N.E.2d 532, 545 (Ind.Ct.App. 1995), *trans. denied; Ott v. State,* 648 N.E.2d 671, 673 (Ind.Ct.App.1995). Although Roberts' argument fails under the *Blockburger* test, his argument prevails under Indiana's more stringent double jeopardy standard.

■ The rape statute provides, in pertinent part, "a person who knowingly or intentionally has sexual intercourse with a member of the opposite sex when: (1) the other person is compelled by force or imminent threat of force . . . commits rape, a Class B felony." IND. CODE § 35–42–4–1(1).[4] The child molesting statute under which Roberts was charged read in relevant part, "a person sixteen (16) years of age or older who, with a child of twelve (12) years of age or older but under sixteen (16) years of age, performs or submits to sexual intercourse or deviate sexual conduct commits child molesting, a Class C felony." IND. CODE 35–42–4–3(c).[5] An examination of the statutes defining rape and child molesting reveals that one could be convicted of both charges without violating the federal prohibition against double jeopardy because each offense requires proof of an element the other does not. Rape requires proof of the use or threat of force, while child molesting requires proof of age.

■ Although Roberts cannot establish a double jeopardy violation under the *Blockburger* test, he argues that his convictions cannot be sustained under Indiana's double jeopardy analysis, inasmuch as both charges were based upon the same incident. The charging information reads as follows:

> On or about May, 1992, in Lawrence County, Indiana, Guy Roberts did knowingly have sexual intercourse with a person of the opposite sex, to wit: [M.G.]; when such person was compelled by force, to wit: held down against her will[.]

> On or about May, 1992, in Lawrence County, Indiana, Guy Roberts, being sixteen (16) years or older, to wit: twenty-eight (28) years old; did perform sexual intercourse with [M.G.], a child the age of twelve (12) years or older but under the age of sixteen (16), to wit: twelve (12) years old.

At the sentencing hearing, the State conceded that both counts were based upon the same alleged act of intercourse.

■ "A defendant may be charged with as many counts of rape, criminal deviate conduct, or child molesting as there are *separate acts committed.*" *DeBruhl v. State,* 544 N.E.2d 542, 545 (Ind.Ct.App.1989) (emphasis

---

3. Our supreme court has reaffirmed its intention to defer its determination of the proper standard for analyzing double jeopardy claims arising under the Indiana Constitution. *See Valentin v. State,* 688 N.E.2d 412 (Ind.1997). In *Valentin v. State,* 685 N.E.2d 1100, 1101–1102 (Ind.Ct.App. 1997), which was vacated upon the granting of transfer by the supreme court, this Court indicated that Indiana's double jeopardy analysis may differ from its federal counterpart.

4. Formerly IND. CODE § 35–42–4–1(a)(1) when Roberts committed the offense in 1992.

5. In 1994, the General Assembly deleted subsection (c) from IND. CODE § 35–42–4–3.

supplied). However, when the State charges a defendant with rape and child molesting based upon the same conduct, the same harm to the victim, and the same short time span, one of the convictions must fail. *Id.* In *Kizer v. State,* 488 N.E.2d 704, 708 (Ind.1986), the State charged the defendant with one count of attempted rape, a Class A felony, and one count of attempted child molesting, a Class A felony, based upon the same attempt of sexual intercourse with a 14–year–old victim. The supreme court raised *sua sponte* "whether attempted rape and attempted child molest as charged under the facts in this case are the same offense." *Id.* at 705. Our supreme court concluded that

> [b]oth of these offenses [rape and child molesting] as manifested in the pertinent language of the statutes and the language of the charging instruments, are aimed at punishing the conduct of an adult male toward achieving nonconsensual sexual intercourse. In the rape case, the nonconsensual goal is to be proved by evidence of compulsion through force or imminent threat of force. In the molesting case, such nonconsensual goal is to be proved by evidence that the victim is under sixteen years of age and has no capacity to consent.
>
> The difference of importance between I.C. Secs. 35–42–4–1 and 35–42–4–3(c) is the manner in which this common quantity must be proved. This procedural difference does not render the two offenses substantively different in the double jeopardy context. From this viewpoint[,] we do not regard proof of age and proof of force as constituting proof of additional and separate 'facts' defeating a conclusion of sameness [citation omitted].

*Id.* at 708; *see also DeBruhl,* 544 N.E.2d at 545 (defendant's convictions for rape and child molesting for engaging in a single act of sexual intercourse violated double jeopardy; therefore, only one conviction and sentence could stand). Because Roberts' rape and child molesting charges arose from one act of sexual intercourse, double jeopardy was violated under Indiana's double jeopardy analysis. Therefore, his conviction and sentence

for the Count II child molesting charge must be vacated.

## II. Statute of limitation for Rape and Child Molesting

Roberts asserts that the trial court erred in denying his motions to dismiss the rape and Count II child molesting charges because they violate the five-year statute of limitation as provided by IND. CODE § 35–41–4–2. IND. CODE § 35–41–4–2(a)(1) provides in pertinent part that a prosecution for a Class B, Class C, or Class D felony is barred unless it is commenced within five years after the commission of the offense. However, "the period within which a prosecution must be commenced does not include any period in which: (1) the accused person is not usually and publicly resident in Indiana or so conceals himself that process cannot be served on him." IND. CODE § 35–41–4–2(g).[6]

 A statute of limitation exists primarily to insure against the inevitable prejudice and injustice to a defendant occasioned by a delay in prosecution. *Heitman v. State,* 627 N.E.2d 1307, 1310 (Ind.Ct.App.1994). It strikes a balance between an individual's interest to be placed on notice to formulate a defense for a crime charged and the State's interest in having sufficient time to investigate and develop its case. *Id.* The tolling provision serves the State's interest of ensuring that it can later prosecute a criminal suspect if, for a time, he hides or otherwise travels to avoid service of process. *Id.* Any exceptions to the limitation period must be construed narrowly and in a light most favorable to the accused. *Umfleet v. State,* 556 N.E.2d 339, 341 (Ind.Ct.App.1990), *trans. denied.*

On July 9, 1997, the State filed a motion to amend the information to add the charges of rape and child molesting against Roberts for allegedly having sexual intercourse with M.G. on or about May 1992. The State's explanation for the late filing was that M.G. did not report the alleged sexual intercourse until July 3, 1997. Both before trial and at the close of the State's evidence, Roberts moved

6. Formerly IND. CODE § 35–41–4–2(d)(1) in 1992.

to dismiss the rape and child molesting charges. He argued that the charges were time barred pursuant to the five-year period of limitations set forth in IND. CODE § 35–41–4–2, but the trial court denied his motion.

■ The statute of limitation for Roberts' rape and child molesting charges began to run in May 1992 when the crimes were committed and would have expired in May 1997. However, Roberts' fourteen month absence from Indiana's jurisdiction effectively suspended the running of the statute of limitation because he was "not usually and publicly resident in Indiana" and was otherwise avoiding authorities. *See Heitman*, 627 N.E.2d at 1310 (the statute of limitation tolls if a suspect leaves Indiana and is evading extradition or is otherwise avoiding authorities; however, the statute of limitation does not toll when a defendant stays in contact with Indiana authorities and cooperates with their investigation). Upon Roberts' return to Indiana, the statute of limitation began to run again; however, fourteen months were added to the time in which the State could charge him. Because the period of limitations did not expire until July 1998, the State timely initiated the prosecution against Roberts for rape and child molesting.[7] Therefore, the trial court correctly denied Roberts' motions to dismiss.

### III. Admissibility of Extrinsic Evidence

■ Roberts next complains that the trial court erred in excluding a videotaped interview of the victim during which she denied having sexual intercourse with Roberts. Roberts asserts that the testimony was admissible under Ind. Evidence Rule 613(b), which allows impeachment of a witness's prior inconsistent statement. Before Roberts would be entitled to impeach M.G.'s testimony by extrinsic evidence of a prior inconsistent statement, "a proper foundation must be laid to warn the witness and enable him to admit, explain, or deny the prior statement."

*Coleman v. State*, 588 N.E.2d 1335, 1340 (Ind.Ct.App.1992), *trans. denied*. If the witness explains or admits to making the prior inconsistent statement, impeachment has occurred, and extrinsic evidence of the inconsistent statement is inadmissible. *Id.; see also* R. Miller, *Indiana Evidence*, § 613.203; Evid. R. 613(b) ("[e]xtrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded the opportunity to interrogate the witness thereon, or the interests of justice otherwise require").

■ The State elicited testimony from M.G. that she never told her mother, the Welfare Department, the Sheriff's Department, or Dr. Borhan that Roberts had raped her. Moreover, Roberts' counsel spent considerable time questioning M.G. on the inconsistencies between her trial testimony and her original statements to the authorities. Roberts' counsel also got M.G. to admit that she testified to a different series of events than those that she had given in her original statements. Because she admitted making the inconsistent statement, the trial court did not err in excluding the videotaped interview for impeachment purposes.

Roberts also maintains that the trial court should have admitted the videotape notwithstanding M.G.'s admission of her prior inconsistent statements. Roberts relies on *United States v. Lashmett*, 965 F.2d 179 (7th Cir. 1992) to support his proposition. In *Lashmett*, the defendant argued that the district court had incorrectly prohibited him from introducing the prior inconsistent statements of two witnesses for impeachment purposes and for its truthfulness. The Seventh Circuit Court of Appeals recognized that there is a division in jurisdictions with similar versions of Rule 613(b) regarding whether evidence of a prior inconsistent statement is admissible after the witness admits to making the prior inconsistent statement.[8] *Id.* at 182. The

---

**7.** Our interpretation of the statute is supported by a strong policy interest in preventing persons from committing crimes in Indiana and absconding from the state to avoid prosecution until after the statute of limitation has expired.

**8.** "Some courts have held that extrinsic evidence should *not* be allowed in such circumstances, because a witness who admits to having uttered a prior inconsistent statement has, by definition, been impeached, rendering extrinsic evidence superfluous." *Lashmett*, 965 F.2d at 182 (empha-

Seventh Circuit adopted the view that "[a] party should be allowed to make his case by the most convincing evidence he can obtain ... and extrinsic proof of a prior statement will often be far more convincing than the acknowledgment of the declarant and not cumulative." *Id.*, quoting 3 *Federal Evidence* § 358 at 564. The Seventh Circuit Court of Appeals concluded that the defendant was therefore entitled to introduce the extrinsic evidence to emphasize the fact that the witnesses had made prior inconsistent statements, even though the witnesses admitted making such statements. *Id.* The court stated that "[p]rior inconsistent statements can severely undermine the credibility of a witness, by showing either a flimsy recollection of events or worse, a propensity to lie, and we think the better view is to give Rule 613(b) a broad reading." *Id.* However, the court held that the error in excluding the extrinsic evidence was harmless because the defendant had accomplished his objective of placing the witnesses' deceit and dishonesty before the jury through other means. *Id.* at 182–183.

■ Here, the jury was fully apprised of M.G.'s prior statement denying that Roberts had forced her to engage in sexual intercourse. M.G. admitted on direct and cross-examination that she had previously denied the allegations of sexual intercourse. In addition, Deputy Robinson, Dr. Borhan, and Sykes all testified that M.G. had denied or failed to admit that Roberts had forced her to have sexual intercourse. Even if we were to conclude that the videotape was admissible despite her acknowledgment of making the prior inconsistent statements, the trial court's error in excluding the extrinsic evidence was harmless.

■ Finally, Roberts argues that the videotape was admissible not for impeachment purposes, but to provide the jury with an opportunity to contrast M.G.'s demeanor at trial and on the tape when questioned about the incidents with Roberts. A trial court is accorded broad discretion in determining the admissibility of evidence. *Reed v. State*, 693 N.E.2d 988, 990 (Ind.Ct.App.1998). Even if a trial court erroneously excludes admissible evidence, we will not reverse a defendant's conviction unless it is inconsistent with substantial justice and his substantial rights have been affected. *Id.; see* Ind. Trial Rule 61 (any error in the admission or exclusion of evidence will not warrant reversal unless it is inconsistent with substantial justice and affects the substantial rights of the parties). Roberts has failed to make a connection between M.G.'s demeanor and his substantial rights. Nevertheless, Officer Robinson testified that M.G. appeared to be nervous during the videotaped interview; however, she did not hesitate to respond to the question about sexual intercourse. Although the jury did not actually view M.G.'s demeanor, they were informed of her behavior and appearance. Therefore, Roberts has failed to demonstrate that his substantial rights were violated.

## IV. Ineffective Assistance of Trial Counsel

Finally, Roberts argues that he was denied the effective assistance of counsel for the following reasons: (1) his counsel failed to request an admonishment or mistrial after the prosecutor questioned Roberts about killing animals; and (2) his counsel failed to object to the jury's review of trial exhibits alone in the jury room. In the alternative, Roberts suggests that the cumulative effect of his counsel's actions constituted ineffective assistance and rendered his guilty verdict unreliable.

When evaluating claims of ineffective assistance of counsel, this Court applies the two-part test articulated in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). *See, e.g., Lee v. State*,

sis in original); *see United States v. Soundingsides*, 820 F.2d 1232, 1240–1241 (10th Cir.1987); *United States v. Cline*, 570 F.2d 731, 735 (8th Cir.1978). "Other courts have held that extrinsic evidence should be permitted, because it is generally more persuasive to a jury than a witness['] simple acknowledgment that he or she made the false or inconsistent statement." *Lashmett*, 965 F.2d at 182; *see Williams v. United States*, 403 F.2d 176, 179 (D.C.Cir.1968); *United States v. Browne*, 313 F.2d 197, 199 (2d Cir.1963), *cert. denied*, 374 U.S. 814, 83 S.Ct. 1707, 10 L.Ed.2d 1037 (1963).

694 N.E.2d 719, 720 (Ind.1998), *cert. denied*, — U.S. ——, 119 S.Ct. 554, 142 L.Ed.2d 461 (1998). First, the defendant is required to show that, in light of all the circumstances, counsel's performance was outside the wide range of professionally competent assistance. *Lee*, 694 N.E.2d at 720. In order to make such a showing, the defendant must prove that his counsel's representation fell below an objective standard of reasonableness under prevailing professional norms. *Id.* Second, the defendant must show that he was so prejudiced by counsel's deficient performance that he was deprived of a fair trial. *Id.* A defendant is prejudiced by such conduct "if there is a reasonable probability that, absent the errors, the fact finder would have had a reasonable doubt respecting guilt." *Strickland*, 466 U.S. at 695, 104 S.Ct. at 2068, 80 L.Ed.2d at 698. This Court will conclude that a fair trial has been denied when the conviction or sentence has resulted from a breakdown of the adversarial process that rendered the result unreliable. *Whitener v. State*, 696 N.E.2d 40, 42 (Ind.1998).

 However, we exercise a strong presumption that counsel was adequate and that all decisions were made through the exercise of reasonable professional judgment. *Lee*, 694 N.E.2d at 720. Thus, the defendant must present strong and convincing evidence to rebut that presumption. *Id.* We will not speculate as to what may have been counsel's most advantageous strategy, and isolated poor strategy, bad tactics, or inexperience does not necessarily amount to ineffective assistance. *Collins v. State*, 676 N.E.2d 741, 743 (Ind.Ct.App.1996), citing *Strickland*, 466 U.S. at 689–691, 104 S.Ct. at 2065–2066, 80 L.Ed.2d at 674.

### A. Failure to Request an Admonishment or a Mistrial

First, Roberts argues that the prosecutor's purposeful attempt to inject impermissible character evidence into the trial to tarnish his credibility amounted to an "evidentiary harpoon" that warranted a mistrial. Roberts contends that his counsel's failure to request a mistrial or an admonishment for this line of questioning constituted ineffective assistance.

 An "evidentiary harpoon" occurs when the prosecution places inadmissible evidence before the jury for the deliberate purpose of prejudicing the jury against the defendant and his defense. *Shaffer v. State*, 674 N.E.2d 1, 6 (Ind.Ct.App.1996), *trans. denied* (1997). In order to obtain a reversal, the defendant must show that (1) the prosecution acted deliberately to prejudice the jury; and (2) the evidence was inadmissible. *Jewell v. State*, 672 N.E.2d 417, 423 (Ind.Ct.App.1996), *trans. denied.* In certain circumstances, the injection of an evidentiary harpoon by a prosecutor may constitute prosecutorial misconduct rising to the level of fundamental error and requiring a mistrial. *Id.*

 However, a mistrial is an extreme remedy warranted only when no other curative measure will rectify the situation. *Id.* When reviewing a claim of fundamental error based on prosecutorial misconduct, this Court employs a two-step analysis: (1) we consider whether the prosecutor engaged in misconduct; and (2) we consider all the circumstances of the case to determine whether such misconduct placed the defendant in a position of grave peril to which he should not have been subjected. *Id.* The gravity of peril turns on the probable persuasive effect of the misconduct on the jury's decision, not on the degree of impropriety of the misconduct. *Id.*

 During the prosecutor's cross-examination of Roberts, the following colloquy occurred:

[PROSECUTOR]: Would it be fair to say that you basically terrorized this family when you lived with them?

ROBERTS: No.

[PROSECUTOR]: Did you ever kill any animals in front of the children?

ROBERTS: No. They would be at school while I would, while I would be at work killing the animals.

[PROSECUTOR]: Okay. That's at your job.

ROBERTS: Correct.

[PROSECUTOR]: How about at seven eighteen 'I' street? Did you ever kill an animal right in front of them?

ROBERTS: No.

[PROSECUTOR]: Never beat a cat to death with a ball bat while they were watching?

ROBERTS: Absolutely not. I've never even heard of this allegation.

[PROSECUTOR]: So then you would deny that you then cut the animal open and took the little kittens out of the animal?

■ At this point, Roberts' counsel interposed an objection, which the trial court sustained, but did not request an admonishment or a mistrial.[9] Roberts has not presented a basis for finding that the prosecutor's line of questioning was a deliberate attempt to bring inadmissible evidence before the jury. On direct examination, Roberts testified that he never threatened M.G. or Sykes while they lived together nor while Roberts' charges were pending. On cross-examination, the prosecutor attempted to show that Roberts threatened M.G. to prevent her from telling the authorities about the rape and that he intimidated M.G. and her family to prevent them from testifying. There is no indication that the prosecutor's remark was precipitated by any deliberate action of the State to prejudice Roberts. Since Roberts has failed to show that he was placed in grave peril or that the outcome of his trial would have been different had his counsel requested an admonishment or a mistrial, he was not denied the effective assistance of counsel.

■ Moreover, the jury was correctly instructed on the proper testimony and evidence to consider as evidence in this case. The trial court instructed the jury that

[t]he unsworn statements or comments of counsel on either side of the case should not be considered as evidence in this case. It is your duty to determine the facts from the testimony and evidence admitted by the court and given in your presence, and you should disregard any and all information that you may derive from any other source.

This Court has held that a trial court's instruction to consider only the testimony and evidence admitted during trial cures any error that results from a prosecutor's improper question. *Shaffer*, 674 N.E.2d at 6; *see also Peterson v. State*, 699 N.E.2d 701, 704 (Ind. Ct.App.1998) ("the trial court's jury instructions are presumed to cure any improper statements made during trial"); *Utley v. State*, 699 N.E.2d 723, 730 (Ind.Ct.App.1998), *trans. denied*. Even if the prosecutor's line of questioning was improper, the error was cured by the trial court's instruction. Therefore, because it is not probable that the prosecutor's questions had a persuasive effect on the jury's guilty verdict, Robert's counsel was not ineffective.

### B. Jury's Question During Deliberations

■ Second, Roberts claims that his trial counsel performed deficiently in addressing the jury's request to review exhibits during jury deliberations. Specifically, Roberts asserts that counsel was ineffective for failing to object to the exhibits being viewed in the jury room instead of in open court. IND. CODE § 34–36–1–6[10] delineates the appropriate procedure to follow when a jury requests to review testimony or seeks clarifi-

9. It appears from the record that Roberts' counsel may have made a tactical decision not to object when this line of questioning began. After the objection was finally made, another decision was made by counsel not to request an admonishment to the jury. We are aware that the decision made by Roberts' counsel may have been a tactical decision that we choose not to second-guess because we can find no error in counsel's conduct. *See State v. Moore*, 678 N.E.2d 1258, 1261 (Ind.1997), *cert. denied*, —— U.S. ——, 118 S.Ct. 1528, 140 L.Ed.2d 678 (1998) ("although egregious errors may be grounds for reversal, we do not second-guess strategic decisions requiring reasonable professional judgment even if the strategy or tactic, in hindsight, did not best serve the defendant's interests"); *Sloane v. State*, 686 N.E.2d 1287, 1295

(Ind.Ct.App.1997), *trans. denied; Autrey v. State*, 700 N.E.2d 1140, 1141 (Ind.1998). This is also true in light of those cases that recognize that a request for an admonishment may result in overemphasizing the particularly damaging question or topic. *See Humphrey v. State*, 680 N.E.2d 836, 839 (Ind.1997) (trial strategy may dictate not requesting an admonishment because it may do more harm than good by focusing the jury's attention upon the undesirable aspect of the evidence); *Shaffer*, 674 N.E.2d at 8 (counsel's decision not to seek an admonishment may reflect a strategic decision to avoid emphasizing the statement).

10. Formerly IND. CODE § 34–1–21–6.

cation on a point of law after retiring to deliberate. IND. CODE § 34–36–1–6 provides

> After the jury ha[s] retired for deliberations, if there is a disagreement between them as to any part of the testimony, or if they desire to be informed as to any point of law arising from the case, they may request the officer to conduct them into court, where the information required shall be given in the presence of, or after notice to, the parties or their attorneys.

Although there has been a division on this Court regarding the application of this statute, our supreme court in *Bouye v. State* concluded that "the language chosen by the General Assembly indicates its intent to limit its [IND. CODE § 34–36–1–6] application to those cases in which the *jury explicitly indicated a disagreement*." 699 N.E.2d 620, 628 (Ind.1998) (emphasis supplied). Because the note merely indicates that the jury wanted to view pieces of documentary evidence and does not suggest any disagreement, IND. CODE § 34–36–1–6 is not applicable. *See also Johnson v. State*, 674 N.E.2d 180, 183 (Ind.Ct.App.1996), *trans. denied* (1997) (where the jury does not explicitly manifest disagreement about the testimony or does not ask for clarification of a legal issue, IND. CODE § 34–36–1–6 does not apply); *Riggs v. State*, 689 N.E.2d 460, 463 (Ind.Ct.App. 1997); *State v. Chandler*, 673 N.E.2d 482, 485 (Ind.Ct.App.1996).

■ Because IND. CODE § 34–36–1–6 was not triggered, the jury's request is evaluated under the guidelines established by *Thomas v. State*, 259 Ind. 537, 289 N.E.2d 508 (1972). Our supreme court adopted § 5.1 of the Standards Relating to Trial by Jury (American Bar Association Project on Standards for Criminal Justice), which now appears as Standard 15–4.1 in 3 AMERICAN BAR ASSOCIATION, STANDARDS FOR CRIMINAL JUSTICE (2d ed.1980), as the factors to be applied to jury requests made during deliberations. *Robinson v. State*, 699 N.E.2d 1146, 1149 (Ind.1998), cit-

ing *Thomas*, 259 Ind. at 540, 289 N.E.2d at 509. The version adopted reads as follows:

■ Materials to jury room.

(a) The court in its discretion may permit the jury, upon returning for deliberation, to take to the jury room a copy of the charges against the defendant and exhibits and writings which have been received in evidence, except depositions.

(b) Among the considerations which are appropriate in the exercise of this discretion are:

> (i) whether the material will aid the jury in a proper consideration of the case;

> (ii) whether the party will be unduly prejudiced by submission of the material; and

> (iii) whether the material may be subjected to improper use by the jury.

*Robinson*, 699 N.E.2d at 1149–1150, citing *Thomas*, 259 Ind. at 540, 289 N.E.2d at 509. Although "*Thomas*, which originally adopted the ABA Standard, was a case in which the exhibits were sent to the jury room at the beginning of deliberations," the same considerations apply to a jury's request to review evidence after deliberations have begun. *Id.*

■ During deliberations, the jury sent the following note to the trial judge: "Can we please see the calendar from [Roberts'] workplace? & a copy of Dr. Borhan's testimony and medical chart?" Dr. Borhan's testimony was unavailable and the medical chart was never admitted into evidence; over Roberts' objection, the trial court sent Roberts' employment calendar and M.G.'s school attendance records, the only exhibits admitted into evidence, without otherwise responding to the jury's question. The requested exhibits assisted the jury in evaluating the testimonial evidence and thereby aided it in its consideration of the case. Because the exhibits did not create any harmful conflicts in the evidence, and because Roberts has failed to show how the exhibits would have influenced the jury to his prejudice, the trial court did not abuse its discretion in sending these exhibits to the jury room. Therefore, Roberts' counsel was not ineffective for permitting the jury to review the exhibits in the jury room.[11]

11. Finally, Roberts also asserts that the cumula- tive effect of his counsel's performance was suffi-

## Conclusion

For the foregoing reasons, the judgment of the trial court is affirmed in part, reversed in part, and remanded with instructions to vacate Roberts' conviction and sentence for the Count II child molesting charge.

STATON, J., concurs.

RILEY, J., dissents with opinion.

### RILEY, Judge, dissenting

I respectfully dissent as to Issue IV. Ineffective Assistance of Counsel. The majority correctly states that in order to reverse a conviction there is a two-pronged test that is delineated in *Jewell v. State*. Roberts must show that the prosecution acted deliberately to prejudice the jury and the evidence was inadmissible. In the colloquy cited by the majority opinion, Roberts answers "no" to the question of whether he had ever killed an animal in front of the children. The prosecutor next asked Roberts if he had ever beaten a cat to death with a ball bat while the children were watching, to which Roberts replied "[a]bsolutely not. I've never even heard of this allegation." (R.1059). Then, the prosecutor asked another question that, in my view, was a deliberate attempt to prejudice the jury:

> So then you would deny that you then cut the animal open and took the little kittens out of the animal?

*Id.*

This question has no suitable answer because the purpose of the question was simply to act as an evidentiary harpoon intended to prejudice the jury. Roberts repeatedly responded that he never killed or cut an animal open in front of the children. Furthermore, whether Roberts cut an animal open is irrelevant as to the charges of rape and child molesting. This is a collateral matter that speaks to Roberts' character. It is obvious that the evidence was inadmissible without a rebuttal witness available to prove that Roberts in fact did cut the animal open. This

testimony was never offered by the State either in its case in chief or in rebuttal. Therefore, because the defense failed to introduce evidence of Roberts' character in its direct examination of Roberts, this line of questioning is inadmissible because it is beyond the scope of cross-examination. Further, the evidence does not fit into any of the evidentiary exceptions allowing admission of character evidence regarding Roberts. Because the evidence is inadmissible and could not be offered as character evidence, the only purpose of the questions posed to Roberts in cross-examination was to intentionally prejudice the jury. Therefore, it is my view that the prosecutor committed prosecutorial misconduct by proceeding with this line of questioning.

A prosecutor's misconduct rises to the level of fundamental error when it places the defendant in a position of grave peril to which he should not have been subjected, considering the misconduct's probable persuasive effect on the jury's decision. *Stowers v. State*, 657 N.E.2d 194, 198 (Ind.Ct.App. 1995), *trans. denied.* The evidence was inadmissible under Ind.Evidence Rule 403 because it was more prejudicial than probative of any fact at issue. Further, Roberts is not accused of killing animals. He is accused of child molesting. The prosecutor's questions do not fall within any exceptions to the prohibition against proving action in conformity with bad character under Evid.R. 404. Therefore, because the only value of the prosecutor's line of questioning was to prejudice the jury, I believe that the prosecutor's misconduct rises to the level of fundamental error.

---

cient to require a reversal. Roberts must show that there existed cumulative errors in his counsel's performance and that such errors resulted in prejudice. *Potter v. State*, 684 N.E.2d 1127, 1135 (Ind.1997). However, these alleged errors

did not amount to prejudice because Roberts has not shown a reasonable possibility that, but for these alleged errors, the result of his trial would have been different.