Frank ROBINSON, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 49S00–9706–CR–387.

Supreme Court of Indiana.

Oct. 2, 1998.

Robert W. Hammerle, Joseph M. Cleary, Indianapolis, for Appellant.

Jeffrey A. Modisett, Attorney General, Rosemary L. Borek, Deputy Attorney General, Indianapolis, for Appellee.

BOEHM, Justice.

A jury found Frank Robinson guilty of murder. In this direct appeal he challenges (1) the sufficiency of evidence and (2) the decision of the trial court to send certain exhibits into the jury room after deliberations had begun. We affirm.

### Factual and Procedural Background

Frank Robinson and William Hill were both members of the 25th Street Mens Club in Indianapolis. The Club was a renovated house that contained some tables, a vending machine, a TV, and a back room used principally for gambling among the members. Hill was shot in the face at the Club on the evening of December 15, 1995 and died five days later. At trial, there were some variations in the witnesses' accounts of the killing. James Dunlop testified that he was gambling in the back room with Hill and Robinson. According to Dunlop, Robinson became upset over his losses, left the club, and returned a few minutes later "in a fit of rage, waiving a pistol with the hammer back cocked...." Dunlop testified that he heard Robinson say "I told you I was going to kill one of you mf's," and that Robinson shot Hill in the face after arguing with him for about two minutes.

Landis Secrest was also in the back room of the Club with Hill and Robinson, but he did not see any gambling. He testified that Robinson had been drinking on the evening of the killing and was "a little unruly," but did not appear to be angry when he left the Club. Secrest said Robinson returned fifteen to twenty minutes later. Secrest saw Robinson hold a cocked gun to Hill's head. Secrest then turned his attention to helping some of the older people away from the scene. Upon his return he heard, but did not see, the shooting.

Robinson also testified at trial. He denied either drinking alcohol or gambling on the night of the killing. He testified that he went to the club to hang some Christmas decorations. He carried a gun for personal protection and put it in the pocket of his jacket because he feared it would be stolen if he left it with his tools. He testified that he encountered Hill who without provocation picked him up and dropped him. As he fell, Robinson had his hand in his pocket holding the gun. According to Robinson, his finger "automatically" dropped to the trigger. The gun discharged when Robinson hit some lockers against the wall. Robinson testified that he then left the club, unaware that he had shot Hill. About two weeks after the shooting, Robinson surrendered to the police and, through his counsel, turned over the gun and jacket he was wearing on the night of the killing. A firearm examiner testified that a hole in Robinson's jacket was possibly caused by the firing of a bullet but he could not conclusively determine its source.[1] He also found traces of smoke powder inside the pocket of the jacket, which he testified was consistent with Robinson's version but also could have come from the hands of someone who handled a gun or ammunition.

About an hour after beginning its deliberations, the jury sent out a note requesting to see some photographs that were admitted into evidence. The requested photographs were sent to the jury room, over Robinson's objection. A short while later, the jury found Robinson guilty of murder. Robinson filed a motion to set aside the verdict alleging the trial court had erred in sending exhibits to the jury room. The motion was denied prior to sentencing, and Robinson was sentenced to the maximum term of sixty-five years imprisonment.

### I. Sufficiency of the Evidence

 Robinson challenges the sufficiency of the evidence supporting his conviction and asks that we enter judgment of conviction for reckless homicide in its stead. Our standard of review for sufficiency cases is well-settled. We consider only the evidence that supports the verdict and draw all reasonable inferences from that evidence. *Bryant v. State*, 644 N.E.2d 859, 860 (Ind.1994). We do not reweigh the evidence or judge the credibility of witnesses. *Id.* We will uphold a conviction if there is substantial evidence of probative value from which a jury could have found the defendant guilty beyond a reasonable doubt. *Garrett v. State*, 602 N.E.2d 139, 142 (Ind. 1993).

 Two State's witnesses were present at the Club on the night of the killing and provided testimony that supports the verdict. James Dunlop testified that Robinson was upset over losing money and, after returning to the Club, pointed a gun at both Dunlop and Hill and then shot Hill in the face. In addition to the eyewitness testimony of Dunlop, the State submitted the generally corroborative testimony of Landis Secrest who saw Robinson hold a cocked gun to Hill's head, but did not witness the actual shooting. Robinson would prefer that we believe his version of the incident and attach greater significance to the supportive but inconclusive testimony of the firearms examiner; however, this is not our province. The jury was in the best position to assess the credibility of witnesses and could assign little—or no—weight to Robinson's version. It is the jury's exclusive prerogative to weigh conflicting evidence. *Id.* Sufficient evidence supports the jury's conclusion that Robinson knowingly killed William Hill.

### II. Jury Deliberations

Robinson also contends that the trial court erred in sending photographs to the jury room after deliberations had begun. The trial court initially indicated that it would not send exhibits with the jury.[2] However, after

---

1. The possibility that the gun was fired through the pocket of the jacket after the night of the killing but prior to Robinson's surrender was at least alluded to by the State's questioning of Robinson and the firearms examiner. Although Robinson testified that he bought the gun new and had never fired the it before he shot Hill, the firearms examiner testified that two of the gun's cylinders had been previously fired.

2. The trial court's concern focused on the gun and jacket—not the photographs. Based on the jury's demeanor during the course of the trial, the trial court thought that the jurors

> seemed extremely curious when we passed them the gun and the jacket about—it's kind of their own theory. It's almost like the assasination [sic] of President Kennedy, I mean, I could just see the wheels turning in their heads

deliberating for about an hour, the jury sent out a note requesting "Pictures of the back room & Hall Inside of House." The trial court allowed both the State and defense counsel to review the note and offer their suggestions in open court with the defendant present. The parties agreed which exhibits were pictures of the back room and hall. Over the Robinson's objection, the trial court then sent those photographs to the jury room.

### A. Inapplicability of the Statute

▉▉▉ The procedure for allowing jurors to review evidence and testimony during deliberations is governed by both statute and case law. The relevant statute provides:

If, after the jury retires for deliberation:

(1) there is a disagreement among the jurors as to any part of the testimony; or

(2) the jury desires to be informed as to any point of law arising in the case; the jury may request the officer to conduct them into court, where the information required shall be given in the presence of, or after notice to, the parties or the attorneys representing the parties.

IND.CODE § 34–36–1–6 (1998).[3] Although the statute refers to disagreements as to "testimony," it has been construed by this Court in Powell v. State, 644 N.E.2d 855 (Ind.1994), to apply to audio tapes that are technically exhibits, as well as to requests dealing with witnesses' trial testimony. There is a division in the Court of Appeals on the issue whether the statute applies to requests relating to all forms of evidence. Compare Anglin v. State, 680 N.E.2d 883 (statute held to apply to request to review documentary exhibits) with Riggs v. State, 689 N.E.2d 460, 462 (Ind.Ct.App.1997) (requests "to review exhibits, which are items of

physical evidence, are never within the scope of the statute"). Arguably a tape of an interview or event is sufficiently similar to testimony to require the same treatment even if not all evidence necessitates the presence of the parties to assure that it is not excessively or selectively used. Whatever the resolution of these issues, we recently held that the statute applies only to cases in which the jury "explicitly indicated a disagreement." Bouye v. State, 699 N.E.2d 620, 628 (Ind. 1998).[4] Because the note in the instant case merely indicates what items the jury wanted to see and does not suggest any type of disagreement, under Bouye the statutory provision does not apply. Powell, to the extent it can be read to suggest or assume that the statute is triggered by any request after deliberations begin, has been clarified by Bouye on that issue.

### B. The Standard Under Case Law

▉▉▉ If the statute is not triggered, jury requests are evaluated under the guidelines established by our case law. In Thomas v. State, 259 Ind. 537, 540, 289 N.E.2d 508, 509 (1972), we adopted § 5.1 of the Standards Relating to Trial by Jury (American Bar Association Project on Standards for Criminal Justice), which now appears with insubstantial changes as Standard 15-4.1 in 3 AMERICAN BAR ASSOCIATION, STANDARDS FOR CRIMINAL JUSTICE (2d ed.1980). The version adopted in Thomas provided:

Materials to jury room.

(a) The court in its discretion may permit the jury, upon retiring for deliberation, to take to the jury room a copy of the charges against the defendant and exhibits and writings which have been

---

about, you know, angle and how was it in the pocket which is why we finally had the detective do a little bit of a demonstration about the gun fitting in the pocket, but I am just concerned that they're going to focus on that to the point of distraction and give more weight to those two (2) physical pieces of evidence than to the testimony of the alleged eyewitnesses and the other exhibits—the other tangible exhibits and photographs and I think—I'm just concerned that it's going to distract them from the legal issues.

3. This section was formerly codified at Indiana Code § 34–1–21–6 (1993). Although the recodi-

fied version incorporates minor editorial changes, the two versions are substantively the same.

4. Prior to Bouye, the Court of Appeals was also divided as to the type of disagreement necessary to trigger the statute. E.g., compare Riggs v. State, 689 N.E.2d 460, 463 (Ind.Ct.App.1997) (requiring explicit disagreement) with State v. Winters, 678 N.E.2d 405, 409 (Ind.Ct.App.1997) (juries may manifest disagreement about testimony by requesting to rehear it).

received in evidence, except depositions.

(b) Among the considerations which are appropriate in the exercise of this discretion are:

 (i) whether the material will aid the jury in a proper consideration of the case;

 (ii) whether any party will be unduly prejudiced by submission of the material; and

 (iii) whether the material may be subjected to improper use by the jury.

*Thomas,* 259 Ind. at 540, 289 N.E.2d at 509.

■ Robinson asserts that these factors apply only to a trial court's decision whether to send exhibits to the jury room when deliberations begin, and not to cases in which the jury request is made during deliberations. *Thomas,* which originally adopted the ABA Standard, was a case in which exhibits were sent to the jury room at the commencement of deliberations. However, *Thomas* did not purport to limit itself to exhibits sent to the jury room at the commencement of deliberations, and if the statute is not implicated, the same considerations apply to a request made after deliberations have begun. The ABA rule was adopted "to guide judges in deciding which materials should be permitted in the jury room during deliberations." *Id.* at 541, 289 N.E.2d at 510. Moreover, many of our post-*Thomas* decisions have applied ABA Standard 15–4.1 to jury requests made after deliberations had begun. *See, e.g., Ingram v. State,* 547 N.E.2d 823, 828–29 (Ind.1989); *Roland v. State,* 501 N.E.2d 1034, 1040 (Ind. 1986); *Torres v. State,* 442 N.E.2d 1021, 1025–26 (Ind.1982); *Pearson v. State,* 441 N.E.2d 468, 476 (Ind.1982); *see also Mitchell v. State,* 535 N.E.2d 498, 500–01 (Ind.1989) (finding no abuse of discretion in sending exhibits to the jury room during deliberations after the jury twice indicated it was deadlocked, but never made a request to review exhibits).[5]

■ In deciding whether to send the requested photographs to the jury room in this case, the trial court stated:

there's a three (3) prong test whether the material will aid the jury in a proper con-

sideration. I think it will, I mean, none of them have ever been in this house so, they're entitled to a second look. Whether any party will be unduly prejudiced by the submission of the material—well, I can't even think of prejudice let alone undue prejudice; and, [three], whether the material may be subjected to improper use by the jury—the photos I don't think could be improperly used.

Robinson does not allege that the trial court improperly applied these factors to the facts of his case. In fact, he did not even discuss these factors in his post-trial motion to set aside the jury verdict, nor does he allude to their application to the facts of his case in this appeal. We find no error in the trial court's decision to send the photographs to the jury room.

### C. *The Right to be Present*

■ Robinson also asserts that, even in the absence of the statutory provision, the trial court was required to bring the jurors into open court to view the photographs. His assertion is grounded in the federal and state constitutional rights to be present during trial. *See* U.S. CONST. amend. 6; IND. CONST. art. I, § 13. Although Robinson cites these two constitutional provisions, he provides no authority for the proposition that there is a constitutional right to be present during jury deliberations that may include viewing of exhibits, or that it is a violation of either the state or federal constitution to permit the viewing of exhibits in the jury room as opposed to in open court. The Sixth Amendment right of the accused "to be present in the courtroom at every stage of his trial" is rooted in the Confrontation Clause. *Ridley v. State,* 690 N.E.2d 177, 180 (Ind.1997) (quoting *Illinois v. Allen,* 397 U.S. 337, 338, 90 S.Ct. 1057, 25 L.Ed.2d 353 (1970)). This right extends to situations related to the presentation of witnesses or evidence, during which the right of cross examination is implicated. *Id.* Allowing jurors to view photographs or other exhibits during their deliberations does not deny Robinson

---

5. These cases implicitly rejected ABA Standard 15–4.2, which applies to requests for testimony "or other evidence" after deliberations have be-

gun and requires that the jury be returned to the courtroom. 3 AMERICAN BAR ASSOCIATION, STANDARDS FOR CRIMINAL JUSTICE (2d ed.1980).

an opportunity to confront or cross examine. We find no Sixth Amendment violation.

Robinson also claims a violation of Article I, § 13 of the Indiana Constitution, which protects a defendant's right to be present in the courtroom at every stage of the proceedings that requires the presence of the jury. *Cape v. State*, 272 Ind. 609, 611, 400 N.E.2d 161, 163 (1980).[6] There is no statutory or constitutional requirement that the jury be returned to the courtroom for the viewing of photographs.[7] Accordingly, Robinson's state constitutional right to be present at all stages requiring the presence of the jury was not implicated.

## Conclusion

We affirm the conviction.

SHEPARD, C.J., and DICKSON, SULLIVAN and SELBY, JJ., concur.

---

**6.** Although stating this general constitutional proposition, *Cape* itself focused on the fact that neither the defendant nor defense counsel was present—nor had either been given notice—when the trial court replayed certain portions of trial testimony requested by the jury. Indiana Code § 34–1–21–6 specifically required the replaying of testimony only "in the presence of, or after notice to, the parties or their attorneys."

**7.** Although not controlling on an issue of Indiana constitutional law, Rule 533 of the NATIONAL CONFERENCE OF COMMISSIONERS ON UNIFORM STATE LAWS, UNIFORM RULES OF CRIMINAL PROCEDURE (1974) explicitly observes that the jury may be recalled to view exhibits or, if no prejudice or misuse is involved, may review them in the jury room. In our view, the existence of Rule 533 demonstrates that this practice presents no issue of fundamental unfairness.