718 N.E.2d 1147 (1999)
INDIANA INSURANCE COMPANY, Appellant-Plaintiff,
v.
AMERICAN COMMUNITY SERVICES, INC., and Donald Scott, Appellees-Defendants, and
Ashley Smith, Janet Smith, individually and as next friend of Shanelle Tinka Warren-Smith and Candice Symone Warren-Smith, minors, and Crystal Warren-Smith, Appellees-Intervenors.
No. 46A05-9809-CV-481.
Court of Appeals of Indiana.
November 5, 1999.
*1149 Michael D. Sears, Jason M. Massaro, Singleton, Crist, Austgen & Sears, Munster, Indiana, Attorneys for Appellant.
Gene M. Jones, Mark A. Lienhoop, Newby, Lewis, Kaminski & Jones, LaPorte, Indiana, John H. Lovell, Lovell, Lovell & Newsom, L.L.P., Amarillo, Texas, Attorneys for Appellees.

*1148 OPINION
BROOK, Judge.

Case Summary
Appellant-plaintiff/cross-appellee Indiana Insurance Company ("Indiana Insurance") appeals the trial court's order denying its motion for summary judgment on its declaratory judgment claim. Appellees-defendants/cross-appellants American Community Services ("ACS") and Donald Scott ("Scott") and appellees-intervenors Ashley Smith, Janet Smith, Shanelle Tinka Warren Smith, Candice Symone Warren Smith, and Crystal Warren Smith ("the Smiths")[1] appeal the trial court's order denying their motion for summary judgment. We affirm the judgment of the trial court.

Issues
Both Indiana Insurance and ACS present several issues for our review. We dispose of all issues by resolving the following two restated issues:
(1) whether Indiana Insurance and ACS designated evidence sufficient to demonstrate that there is no genuine issue of material fact such that summary judgment must be awarded to either party as a matter of law; and
(2) whether the parties are collaterally estopped by the findings and conclusions of two Texas courts from litigating the issue of insurance coverage in Indiana state court.

Facts and Procedural History
Our review of the record reveals the following facts most favorable to the decision of the trial court: Basil Smith ("Smith") was killed and Charles Harrington ("Harrington") was injured in a single-vehicle accident in Oldham County, Texas, on October 11, 1992. Harrington and Smith, magazine salesmen for ACS, were sleeping passengers in a van driven by Clayton Isaac ("Isaac") and owned by Jane and Andre Walker ("the Walkers"),[2] who *1150 had an independent contractor relationship with ACS; Isaac was the Walkers' employee. The business arrangement between ACS and the Walkers was that the Walkers would furnish the vans that were used to transport the magazine salesmen.
At the time of the accident, ACS had obtained two insurance policies from Indiana Insurance: a standard "IndiPack Liability Coverage Policy of Insurance" (the "IndiPack Policy") and a "Comprehensive Excess Liability Policy" (the "Excess Policy"). The IndiPack policy had been amended with an endorsement that read in pertinent part:
THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY
HIRED AUTO AND NON-OWNED AUTO LIABILITY
This endorsement modifies insurance provided under the following:
INDIPACK POLICY
A. Insurance is provided only for those coverages which are shown in the Declarations.
1. HIRED AUTO LIABILITY
The insurance provided under the IndiPack Liability Coverage Form, paragraph A.1. Business Liability, applies to "bodily injury" or "property damage" arising out of the maintenance or use of a "hired auto" by you or your employee in the course of your business.
2. NON-OWNED AUTO LIABILITY
The insurance provided under the IndiPack Liability Coverage Form, Paragraph A.1. Business Liability, applies to "bodily injury" or "property damage" arising out of the use of any "non-owned auto" in your business by any person other than you....
C. The following additional definitions apply:
2. "Hired auto" means any "auto" you lease, hire or borrow. This does not include any "auto" you lease, hire or borrow from any of your employees or members of their households, or from any partner or executive officer of yours.
3. "Non-owned auto" means any "auto" you do not own, lease, hire or borrow which is used in connection with your business. However, if you are a partnership, a "non-owned auto" does not include any "auto" owned by any partner.[3]

Procedural HistoryHarrington
On December 16, 1992, Harrington sued ACS, the Walkers, Paragon, and Isaac in federal court in Texas ("the Texas court").[4] Initially, Indiana Insurance defended ACS in the Harrington suit; however, Indiana Insurance sent a letter dated January 4, 1994,[5] to ACS president Scott, expressing a reservation of rights. The letter also "direct[ed]" Mr. Scott's "attention to exclusion (e) of the policy which excludes bodily injury to an employee of the insured ... [and to] exclusion (j) of the policy which provides that there is no insurance coverage for bodily injury or property damage arising out of the ownership, maintenance, use or entrustment of any auto owned by the insured."
The Harrington suit was tried to a jury in the Texas court. On February 16, 1994, *1151 a final judgment of $300,000 was entered in favor of Harrington against Isaac, ACS, and the Walkers ("the Harrington judgment").[6]
In response to the Harrington judgment, Indiana Insurance filed a complaint for declaratory relief against ACS and Scott[7] in the LaPorte Superior Court on March 14, 1994 (the "Harrington declaratory action"), seeking a determination that neither of its policies issued to ACS afforded ACS any right of indemnification for the Harrington judgment. ACS's answer stated that Indiana Insurance had agreed to represent ACS under the terms of the policy issued and had therefore waived any right to deny coverage and should be estopped from so doing. Among other affirmative defenses, ACS asserted that Harrington was not an employee of ACS. Finally, ACS counter-claimed that by reserving its rights within days of the trial in the Harrington suit, Indiana Insurance had breached the agreement between the parties, which was an act of bad faith.
Indiana Insurance moved for summary judgment in the Harrington declaratory action on April 30, 1998, asserting that there was "no genuine issue that the van driven by Isaac was neither a `hired auto' nor a `non-owned auto' as defined under the [hired auto and non-owned auto liability endorsements]," and as such, there was "no genuine issue that there is no coverage under the IndiPack Policy" or under the Excess Policy, and that Indiana Insurance was entitled to declaratory judgment as a matter of law. In support of this summary judgment motion, Indiana Insurance submitted among its designated evidence its request for admissions and ACS's answers thereto.[8]
In response to Indiana Insurance's summary judgment motion, on June 11, 1998, ACS moved to withdraw its admissions in the Harrington declaratory action. On June 15, 1998, ACS filed its own motion for partial summary judgment on its policy coverage and breach of contract claims, a brief in response to Indiana Insurance's summary judgment motion, and a motion for abatement regarding the issue of coverage under the Excess Policy.[9]
ACS asserted more than ten different grounds for summary judgment in its favor. The two arguments pertinent to this appeal are (1) that as a matter of law, the van "was either a borrowed `hired auto' or a `non-owned auto'" and (2) that as a matter of law, Harrington and Smith could not have been in the course of their employment when the accident occurred because they were sleeping at the time.
The trial court denied all parties' summary judgment motions on August 17, 1998.[10]

Procedural HistorySmith
On August 8, 1995, the Smiths filed their complaint against ACS, Isaac, and the Walkers in the same Texas court in which the Harrington suit had been tried. The *1152 Texas court entered summary judgment in favor of the Smiths on September 14, 1995, ruling that Isaac's negligence on the date of the accident proximately caused Smith's death; that Isaac was acting within the course and scope of his employment at the time of the accident; that an employer-employee relationship existed between Isaac and the Walkers; and that Isaac and the Walkers were jointly and severally liable for the damages and injuries to Smith. On October 27, 1995, the Texas court entered a second summary judgment order, reiterating its previous conclusions and entering the following new conclusions: that an employer-employee relationship existed between Isaac and ACS at the time of the accident, and that ACS was liable jointly and severally with the Walkers for the damages and injuries to Smith.
As it had in the Harrington suit, on October 20, 1995, Indiana Insurance filed a complaint for declaratory relief against ACS in the Smith matter ("Smith declaratory action"). In response, the Smiths filed an original complaint in intervention on February 5, 1996.[11]
When Indiana Insurance filed its summary judgment motion in the Harrington declaratory action, on April 30, 1998, it also filed a summary judgment motion in the Smith declaratory action. Interestingly, Indiana Insurance argued that because ACS had admitted "that the van driven by Isaac was not owned by ACS but, instead, was owned by the Walkers," and had "admitted that Smith was not acting within the scope of his employment at the time of the [a]ccident," there was no genuine issue that there was no coverage under the hired auto endorsement. Similarly, Indiana Insurance also argued,
While it is true, as established above, that ACS did not own the van involved in the [a]ccident, ACS admits that Smith was not acting in connection with ACS's business.... Consequently, because the van in question was not used in connection with ACS's business, Smith's death is not covered by the `Non-Owned Auto' endorsement to the IndiPack Policy.
The trial court denied all parties' motions for summary judgment in the Smith declaratory action at the same time it denied the Harrington motions, on August 17, 1998. On September 4, 1998, the trial court certified its order for interlocutory appeal.

Discussion and Decision

Standard of ReviewDenial of Summary Judgment
When reviewing the grant or denial of a summary judgment motion, this court applies the same legal standard as the trial court, i.e., summary judgment is appropriate when no designated genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. INS Investigations Bureau, Inc. v. Lee, 709 N.E.2d 736, 740 (Ind.Ct.App.1999). A party appealing the denial of summary judgment carries the burden of persuading this court that the trial court's decision was erroneous. Id. The party seeking summary judgment must demonstrate the absence of any genuine issue of fact as to a determinative issue, and only then is the non-movant required to come forward with contrary evidence. Jarboe v. Landmark Community Newspapers, 644 N.E.2d 118, 123 (Ind. 1994). As Indiana Insurance correctly argues, this Court may not search the entire record but may only consider the evidence that has been specifically designated. Wedel v. American Elec. Power Serv. Corp., 681 N.E.2d 1122, 1130 (Ind.Ct.App. 1997), trans. denied (1998); Ind. Trial Rule 56(C). "Cross motions for summary judgment on the same issues do not alter the standard for granting summary judgment." Fifth Third Bank v. Bentonville *1153 Farm Supply, 629 N.E.2d 1246, 1248 (Ind. Ct.App.1994).
We note also that our supreme court has held that "the interpretation of an insurance policy, as with other contracts, is primarily a question of law for the court, even if the policy contains an ambiguity needing resolution." Tate v. Secura Ins., 587 N.E.2d 665, 668 (Ind. 1992). If insurance policy language is clear and unambiguous, it should be given its plain and ordinary meaning. Id. If there is an ambiguity, the policy should be interpreted most favorably to the insured, and construed to further the policy's basic purpose of indemnity. Id.

A. Issues Presented on Appeal by Indiana Insurance
Indiana Insurance makes much of its assertion that there was an employer-employee relationship between ACS and Smith and Harrington. In its brief, it refers us to points in the record where ACS allegedly admitted that there was an employer-employee relationship, and asserts, "[f]ailing to recognize the conclusive impact of ACS'[s][a]dmissions was the [l]ower [c]ourt's first error."
We have thoroughly reviewed the designated evidence, however, and find Indiana Insurance's reliance on ACS's admissions to be misplaced. ACS's responses to the second request for admissions propounded by Indiana Insurance in the Smith action do not go any further toward resolving the controversy as a matter of law.[12] Rather, ACS admitted only (1) that the van involved in the accident was owned by the Walkers; and (2) that on the date of the accident Isaac was an employee of ACS and of the Walkers. ACS specifically denied (1) that the van was owned by ACS; (2) that Smith was an employee of ACS or of the Walkers; (3) that Smith was acting within the scope of his employment as an employee or agent of the Walkers; and (4) that Smith was acting within the scope of his employment as an employee or agent of ACS.
In response to requests to "admit or deny the vehicle in which Basil Smith was a passenger was, at the time of his accident, being used for the business purposes [of Paragon, Inc., the Walkers, and ACS]," ACS responded in each instance by objecting to the requests as vague and ambiguous and as seeking the admission of a legal conclusion. When asked to admit or deny that the van was leased by ACS, ACS's response was to deny; when asked to admit or deny that the vehicle was "not owned, leased or borrowed by [ACS]," ACS admitted that it was not owned or leased by ACS, but objected to the term "borrowed," as being vague and ambiguous and seeking the admission of a conclusion.
"The term `employee' ... is a term of art with a distinct meaning at common law." Mortgage Consultants, Inc. v. Mahaney, 655 N.E.2d 493, 495 (Ind. 1995). Generally, whether one acts as an employee or as an independent contractor is a question of fact. Id. at 496. Our review of the record establishes that ACS has explicitly and consistently denied both that Smith and Harrington were employees of ACS and that they were acting in the course and scope of their employment. Yet on appeal, Indiana Insurance has focused much of its effort toward advancing the argument that even though Harrington and Smith were asleep in the van when the accident occurred, they were traveling employees acting within the course and scope of their employment. Thus, they argue, whether coverage exists under the IndiPack policy should be determined under the rubric of worker's compensation law. Indiana Insurance even conceded in its initial summary judgment motion that ACS admitted Smith was not acting in connection with ACS's business.
In response, ACS and the Smiths urge that "master-servant" law should be applied, *1154 as it was in the Texas court. However, for this Court to make a determination at this stage as to which body of law should be applied would be to put the procedural cart before the factual horse, because Indiana Insurance has failed to meet its burden under Jarboe to demonstrate the absence of any genuine issue of fact as to a determinative issue. Because of this failure, we find no error in the trial court's denial of summary judgment in favor of Indiana Insurance and decline to predict how the factual determination of whether Harrington and Smith were ACS's employees will affect the trial court's analysis as to whether ACS should receive coverage under the IndiPack policy.
We are troubled that Indiana Insurance argues both sides of the employer-employee issue. Arguing both sides, however, may be indicative of the conclusion that Smith's and Harrington's employment status is a question of fact yet to be determined by the trial court and precluding summary judgment.

B. Issues Presented on Cross-Appeal by ACS and the Smiths

1. Course and Scope of Employment
In support of their cross-motion for summary judgment, ACS and the Smiths also argue that "characterization of the parties is important, because the coverage clause addresses the employment status of the tortfeasor (Isaac), while the exclusion provisions address the employment status of the persons sustaining bodily injury, Harrington and Smith." For the same reasons that we cannot rule as a matter of law that Harrington and Smith were employees of ACS, we cannot rule as a matter of law that they were not.
In their brief to this Court, ACS and the Smiths argue that "[i]t is clear that all parties are bound by the factual and legal determinations made in the Texas federal court." They rely upon Texas cases that have held that a sleeping passenger is outside the course and scope of his employment. However, Indiana Insurance cites in response Olinger Const. Co. v. Mosbey, 427 N.E.2d 910 (Ind.Ct.App.1981), Lasear v. Anderson, 99 Ind.App. 428, 192 N.E. 762 (1934), and Lutz v. DeMars, 559 N.E.2d 1194 (Ind.Ct.App.1990), all Indiana cases in which sleeping employees were held to have been acting within the course and scope of their employment, in spite of their having been asleep.
We find that we need not reach the choice-of-law issues presented by ACS and the Smiths, because there remains the threshold issue of whether Smith and Harrington will be found to be employees of ACS. If, for example, the finder of fact determines that Smith and Harrington were employees of the Walkers but not of ACS, the question may remain as to whether theyalong with the Walkers and/or with Isaacwere acting in the course and scope of ACS's business, in light of the insurance contract's provisions and the interpretation given to those provisions by the trial court. Given the material designated to this Court at this time, however, we cannot determine the course and scope of employment issue as a matter of law.

2. "Hired Auto" or "Non-Owned Auto" Coverage Endorsements
According to the "Hired Auto" endorsement set forth above, the van must have been leased, hired, or borrowed by ACS. ACS argues that "[i]t is clear the van was not leased or hired by ACS." ACS relies upon the affidavit testimony of Edward Scott, the manager of ACS, to show that the business arrangement between ACS and the Walkers was that the Walkers would furnish the vans that were used to transport magazine salesmen.
The designated material regarding the ownership and usage arrangement of the van does not settle the issue as a matter of law. Although the parties have not argued the possibility in their appellate briefs, it seems logically consistent that a van that was not leased, hired, or borrowed could nonetheless be "furnished," as was apparently the arrangement in the instant case, and then negligently used by an individual *1155 (e.g., Isaac) in connection with one's business. If that negligence caused injury to "an employee of the insured," coverage might be excluded under exclusion (e), as cited by Indiana Insurance in its initial reservation of rights letter. However, the designated material does not establish as a matter of law that such an event occurred. It will be for the finder of fact to determine whether the IndiPack policy and its endorsements are ambiguous in light of the situation presented by the arrangement between ACS and the Walkers, and in light of the employment status of Smith and Harrington as determined by the finder of fact.

C. Collateral Estoppel
The issues as framed by the parties give rise to the issue of whether either party should be collaterally estopped from obtaining a declaratory judgment in an Indiana state court. We find that the doctrine of collateral estoppel does not apply in this case.
The doctrine of res judicata bars relitigation of a claim after a final judgment has been rendered when the subsequent action involves the same claim between the same parties or their privies. Hermitage Ins. Co. v. Salts, 698 N.E.2d 856, 859 (Ind.Ct.App.1998). "The principle of res judicata and/or collateral estoppel is the prevention of repetitious litigation of essentially the same dispute." Id. The following four requirements must be satisfied for a claim to be precluded under the doctrine of res judicata:
1) the former judgment must have been rendered by a court of competent jurisdiction; 2) the former judgment must have been rendered on the merits; 3) the matter now in issue was, or could have been determined in the prior action; and 4) the controversy adjudicated in the former action must have been between the parties to the present suit or their privies.
Id.
In the instant case, we must determine whether three former judgments, namely, the the Harrington judgment, the Smith judgment, and a judgment entered in the Potter County, Texas court, meet the four requirements. The Harrington judgment included conclusions that an employee-employer relationship existed, both between Isaac and ACS and between Isaac and the Walkers. The trial court applied Texas substantive law to reach these conclusions. ACS appealed the Harrington judgment to the Fifth Circuit Court of Appeals, which affirmed the judgment on September 8, 1995. ACS paid the Harrington judgment in October 1995. The first Smith partial summary judgment included conclusions that Isaac's negligence on the date of the accident proximately caused Smith's death; that Isaac was acting within the course and scope of his employment at the time of the accident; that an employer-employee relationship existed between Isaac and the Walkers; and that Isaac and the Walkers were jointly and severally liable for the damages and injuries to Smith. The Texas court's second summary judgment order in the Smith action reiterated its previous conclusions and entered the following new conclusions: that an employer-employee relationship existed between Isaac and ACS at the time of the accident, and that ACS was liable jointly and severally with the Walkers for the damages and injuries to Smith.
In the instant action, it is neither disputed that ACS was determined to be jointly and severally liable to Harrington and to the Smith plaintiffs, nor has any party challenged the competency of the Texas court's jurisdiction. However, ACS's liability is not the issue before this Court in the instant cross-appeals. Rather, the issue is whether Indiana Insurance will provide coverage to ACS as an insured to satisfy the judgments against it rendered in the Texas court.
Indiana Insurance undertook a defense of ACS in the Harrington action, but at the eleventh hour changed its course and advised ACS of a reservation of rights. In the Smith action, Indiana Insurance did not undertake a defense of ACS at all.
*1156 Whether this conduct of Indiana Insurance in the two actions amounts to bad faith on its part is, as we have noted, an issue that has been bifurcated from the issues before us in this interlocutory appeal. That determination notwithstanding, we fail to see how the issue of whether Indiana Insurance will provide coverage for the two Texas court judgments "could have been determined" in either action. This is so because although the Harrington and the Smith judgments both contained findings that Isaac was an employee of ACS at the time of the accident, it does not necessarily follow as a matter of law that Smith and Harrington were also ACS employees. It is their status, not only Isaac's, that determines whether coverage exists under the Indiana Insurance policy at issue here. That Isaac was found to be an ACS employee in the Texas court is not dispositive of the coverage issue in this appeal.
We are thus brought to the third former judgment we must consider, which is the judgment rendered upon an original petition filed by ACS in the 181st District Court in and for Potter County, Texas on October 24, 1995 ("cause number 81666-B"). The 181st District Court dismissed cause number 81666-B on September 2, 1997, concluding that that "the exercise of personal jurisdiction over Indiana Insurance Company does not comport with traditional notions of fair play and substantial justice"; that "litigation in Texas would be an undue burden for Indiana Insurance Company"; that "Texas does not have an interest in adjudicating this dispute because there is no Texas insurance policy in dispute"; that "Texas does not have an interest in adjudicating this dispute because neither the insurer, the insureds nor the beneficiaries are Texas residents"; "the Plaintiff and Intervenors are able to obtain effective and convenient relief without this Court's exercise of jurisdiction over Indiana Insurance Company"; and "[t]he interstate judicial system's interest in obtaining the most efficient resolution of controversies and the shared interest of the several states in furthering fundamental substantive social policies both indicate that this Court should not exercise jurisdiction over Indiana Insurance Company." ACS appealed this dismissal to the 7th Court of Appeals in Texas, which heard arguments on the appeal in June 1998, but which had not ruled on that appeal as of the time the parties filed their briefs in the instant appeal.
By its very conclusions, the Potter County court's decision was not one on the merits, but rather a declination of the matter on jurisdictional grounds. Thus, it fails to satisfy the second of the four requirements for the doctrine of res judicata as set forth above. Should the 7th Court of Appeals in Texas reverse the Potter County court, at that time issues of comity and dominant jurisdiction may arise; currently, however, the subject matter of that dispute (including, for example, ACS's claims that Indiana Insurance acted in bad faith) has been bifurcated from the subject matter of the instant dispute.
Thus, we conclude that collateral estoppel does not operate in this case to settle the issue of coverage in favor of either party as a matter of law.

Conclusion
For the foregoing reasons, the judgment of the trial court is affirmed.
BAKER and RUCKER, JJ., concur.
NOTES
[1] The Smiths are the heirs of Basil Smith, who was killed in the accident giving rise to the instant insurance coverage dispute.
[2] Jane and Andre Walker also did business as "Paragon, Inc." This fact, however, is not pertinent to this appeal; accordingly, some references in the record to Paragon, Inc. have been omitted in our decision.
[3] In keeping with the contract's terminology, also employed by the parties, we shall refer to these endorsements as the "hired auto" and "non-owned auto" liability endorsements.
[4] We shall refer to this Texas proceeding as "the Harrington suit," as distinguished from "the Harrington declaratory action," discussed below.
[5] We note that ACS received this letter approximately ten days before the trial of the Harrington suit, and has argued to this Court that it was prejudiced by the alleged lack of notice of Indiana Insurance's reservation of rights. Although the timing of the reservation of rights may prove relevant in the resolution of ACS's bad-faith claims against Indiana Insurance, those claims have been bifurcated from the summary judgment subject matter of the instant appeal.
[6] The Harrington judgment included conclusions that an employee-employer relationship existed, both between Isaac and ACS and between Isaac and the Walkers. The trial court applied Texas substantive law to reach these conclusions. ACS appealed the Harrington judgment to the Fifth Circuit Court of Appeals, which affirmed it on September 8, 1995. ACS paid the Harrington judgment, which with interest and costs totaled $344,701.63, in October 1995.
[7] Henceforth, we shall refer to these co-defendants collectively as "ACS."
[8] The copies in the record of these designated materials are not dated.
[9] On the same date, ACS and the Smiths filed identical motions in the Smith declaratory action.
[10] Apparently the trial court conducted a hearing on the motions on August 7, 1998; the praecipe even requests the transcript of that hearing; however, our review of the twelve volumes of the record and the table of contents does not reveal that the transcript was included in the record.

In its order of August 17, 1998, the trial court also denied ACS's motion to withdraw admissions, but granted ACS's motion for abatement regarding coverage under the excess policy.
[11] The Smiths were granted leave to and did file a first amended complaint in intervention on June 26, 1998.
[12] The responses in the two actions are virtually identical. The only difference is that in the Smith action, ACS admitted that Isaac was an employee of ACS, while in the Harrington action ACS denied it.