Robert GOODRICH, Appellant–Plaintiff,

v.

**INDIANA MICHIGAN POWER COMPANY dba American Electric Power, Appellee–Defendant.**

No. 71A03–0205–CV–167.

Court of Appeals of Indiana.

Feb. 25, 2003.

Robert J. Lasalvia, Grainger, IN, Stanley White, White & White, Indianapolis, IN, Attorneys for Appellant.

Carmen M. Piasecki, Thomas H. Singer, Nickle & Piasecki, South Bend, IN, Attorneys for Appellee.

## OPINION

KIRSCH, Judge.

Robert Goodrich appeals the trial court's grant of partial summary judgment on his negligence claim against American Electric Power ("AEP") and the jury's verdict in favor of AEP, raising the following issues for review:

I. Whether the trial court erred in ruling as a matter of law that AEP did not owe a duty to the general public to insulate its power lines that were twenty-three feet above the ground and ran over an abandoned, grassy alleyway.

II. Whether the trial court committed reversible error when it granted the jury's request during its delib-

erations to view a specific exhibit in the jury room.

We affirm.

## FACTS AND PROCEDURAL HISTORY

On October 7, 1997, Goodrich was working for North Central Roofing as a foreman of a roofing crew. He and a fellow worker were installing a drip edge on a two-story home. Goodrich was standing on a platform several feet above the ground. Goodrich's fellow worker handed him a ten-foot section of aluminum drip edge. While Goodrich was holding the drip edge, it came into contact with a 7200 volt electric distribution line owned by AEP. Goodrich fell from the platform, hitting a window air conditioner and then the ground. From this fall, he suffered injuries that rendered him paraplegic.

Goodrich brought suit against AEP for negligence, arguing that AEP breached its duty of care in a number of ways. AEP moved for summary judgment, and the trial court granted the motion with regard to the claims that alleged that Goodrich was a member of the general public to whom a duty is owed. The trial court denied summary judgment on Goodrich's claims to the extent that he alleged "that he is a member of a particular segment of the population who Defendant knows or has reason to know will be regularly exposed to the subject power line." *Appellant's Appendix* at 10.

The case was tried to a jury on the remaining theories. During deliberations, the jury sent a note to the judge requesting to see Exhibit 7. Without informing the parties, the court complied and sent the exhibit to the jury room. The jury continued deliberations, took a break for lunch, and returned to its deliberations. It returned a verdict that Goodrich was ten percent at fault, North Central Roofing

was ninety percent at fault, and AEP was not at fault.

Goodrich now appeals.

## DISCUSSION AND DECISION

Goodrich contends that the trial court erred in ruling as a matter of law that AEP did not owe a duty to the general public with regard to its power lines that were twenty-three feet above the ground and ran over an abandoned, grassy alleyway.

When reviewing the grant or denial of a summary judgment motion, this court applies the same legal standard as the trial court, i.e., summary judgment is appropriate when no designated genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. *Indiana Ins. Co. v. Am. Cmty. Servs., Inc.,* 718 N.E.2d 1147, 1152 (Ind.Ct.App.1999); *May v. Frauhiger,* 716 N.E.2d 591, 594 (Ind.Ct.App.1999) (citing Ind. Trial Rule 56(C)); *Birrell v. Indiana Auto Sales & Repair,* 698 N.E.2d 6, 7 (Ind.Ct.App.1998), *trans. denied.* This court may not search the entire record but may only consider the evidence that has been specifically designated. *Indiana Ins. Co.,* 718 N.E.2d at 1152; *Birrell,* 698 N.E.2d at 7. All pleadings, affidavits, and testimony are construed liberally and in the light most favorable to the nonmoving party. *May,* 716 N.E.2d at 594. We need not rely on the theory espoused by the trial court, and we will affirm a grant of summary judgment if it is sustainable on any basis found in the record. *Brazauskas v. Fort Wayne–South Bend Diocese, Inc.,* 714 N.E.2d 253, 259 (Ind.Ct.App.1999), *trans. denied.*

■ Previous opinions of this court have explained that companies engaging in the generation and distribution of electricity have a duty to exercise reasonable care to keep distribution and transmission lines

safely insulated in places where the general public may come into contact with them. *Rogers v. Grunden,* 589 N.E.2d 248, 256 (Ind.Ct.App.1992), *trans. denied; Brown v. N. Indiana Pub. Serv. Co.,* 496 N.E.2d 794, 797 (Ind.Ct.App.1986), *trans. denied* (1987); *Pilkington v. Hendricks County Rural Elec. Membership Corp.,* 460 N.E.2d 1000, 1007 (Ind.Ct.App.1984). Conversely, insulation is not required when lines are sufficiently isolated so that the general public could not reasonably be anticipated to be dangerously close to the lines. *Rogers,* 589 N.E.2d at 256; *Brown,* 496 N.E.2d at 797; *Jones v. City of Logansport,* 436 N.E.2d 1138, 1150 (Ind.Ct.App.1982); *S. Indiana Gas & Elec. Co. v. Steinmetz,* 177 Ind.App. 96, 99–100, 377 N.E.2d 1381, 1383 (1977). "General public" has been defined by this court as a person of that " 'great multitude of persons' who would, in the course of daily events, be exposed to danger by the presence of an uninsulated wire carrying a dangerous voltage of electricity." *Rogers,* 589 N.E.2d at 256 (quoting *Brown,* 496 N.E.2d at 797). Moreover, an electric utility will not generally be required to insulate its wires with a covering or coating to protect only those persons who might come into contact with power lines in the course of their employment. *Spudich v. N. Indiana Pub. Serv. Co.,* 745 N.E.2d 281, 291 (Ind.Ct.App.2001), *trans. denied; Brown,* 496 N.E.2d at 797–98; *Jones,* 436 N.E.2d at 1150. An exception is made to this rule, however, when the utility knows or has knowledge of such facts from which it should know that a particular segment of the population will be regularly exposed to uninsulated wires for one reason or another, particularly when children are involved. *Brown,* 496 N.E.2d at 797–98; *Jones,* 436 N.E.2d at 1150; *Steinmetz,* 177 Ind.App. at 100, 377 N.E.2d at 1383. As our supreme court summarized:

"Generally, electric utilities have no duty to insulate even those lines that they own if the general public is not exposed to the lines and the utility has no knowledge of a particular segment of the population that is regularly exposed to the uninsulated lines. Stated another way, the utility company has a duty to insulate its lines in places where the general public comes into contact with them, but not where the only people who come into contact with them are utility employees or others charged with knowledge of necessary safety precautions."

*Butler v. City of Peru,* 733 N.E.2d 912, 916–17 (Ind.2000) (citations omitted).

However, a duty, when found to exist, is the duty to exercise reasonable care under the circumstances. *Correll v. Indiana Dept. of Transp.,* 783 N.E.2d 706 (Ind.Ct.App. 2002), *trans. pending.* The duty never changes, although the standard of conduct required to measure up to that duty varies depending upon the particular circumstances. *Id.*

Accordingly, although the cases discussing liability for injuries from electric lines refer to a duty to insulate the lines, our review of the opinions leads us to conclude that what these courts have intended by such language is that an electric company does not breach its duty to exercise reasonable care by failing to take protective measures with regard to power electric transmission lines with which the general public is unlikely to come into contact.

In *Steinmetz,* 177 Ind.App. at 100, 377 N.E.2d at 1383–84, the plaintiff was injured by the defendant's electric lines. The defendant argued that it could not be liable for the injury even though it failed to insulate its lines. In holding in favor of the defendant, we noted that the lines were elevated to a height of over thirty

feet, and there was little evidence of any facts which reasonably should have put the defendant on notice that the general public might come into contact with the lines at the place of the accident with any regularity.

■ In this case, the power lines were located twenty-three feet above the ground between two residences and over an abandoned, grassy alleyway that the two property owners mowed. Goodrich's contact with the lines resulted from his standing on an elevated platform and extending a long, conductive object over his shoulder. Under these circumstances, the general public is not likely to come into contact with the lines in question. Thus, AEP did not breach its duty to exercise reasonable care, and the trial court did not err in granting partial summary judgment on Goodrich's claims that relied on AEP's duty to the general public. *See also Spudich*, 745 N.E.2d at 291–92 (electric utility owed no duty to plaintiff, not a member of general public, who contacted lines forty feet above the ground while elevated to place Christmas decorations on trees); *Rogers*, 589 N.E.2d at 256 (no duty to insulate lines on private property leased by plaintiff's employer, an area to which the general public had no access, where plaintiff's exposure to power lines occurred as a result of his use of sixty foot auger in proximity to lines); *Brown*, 496 N.E.2d at 797–98 (plaintiff was not member of general public where he was on totally fenced, private property of employer, to which general public had no access, and exposure to electric lines occurred as a result of his working with crane in proximity to lines).[1]

Goodrich next argues that the trial court committed reversible error when it granted the jury's request during its deliberations to have Exhibit 7 sent to the jury room. IC 34–36–1–6 states:

"If, after the jury retires for deliberation:

(1) there is a disagreement among the jurors as to any part of the testimony; or

(2) the jury desires to be informed as to any point of law arising in the case;

the jury may request the officer to conduct them into court, where the information required shall be given in the presence of, or after notice to, the parties or the attorneys representing the parties."

However, our supreme court has held that a jury's mere request to review evidence, without more, does not implicitly show disagreement. *Thacker v. State*, 709 N.E.2d 3, 6 (Ind.1999); *Gibson v. State*, 702 N.E.2d 707, 709 (Ind.1998); *Robinson v. State*, 699 N.E.2d 1146, 1149 (Ind.1998). Thus, in such cases, the statute is not implicated.

Here, the jury's note merely stated that the jurors wished to view an exhibit. Accordingly, it expressed no disagreement, and the statute does not govern the trial court's response.

■ When, as here, the statute is inapplicable, the trial court should consider three factors in deciding whether to permit the jury to take a copy of the exhibits into the jury room. *Thacker*, 709 N.E.2d at 6. Those factors are: (1) whether the material will aid the jury in a proper consideration of the case; (2) whether any party will be unduly prejudiced by submission of the material; and (3) whether the material

---

1. Although the trial court granted AEP's motion for summary judgment on Goodrich's claims based on AEP's alleged duty to the general public, it denied the motion with regard to whether AEP owed a duty to Goodrich as a member of a particular class to whom a duty extends under the circumstances. On this basis, Goodrich was permitted to present to the jury several ways in which AEP breached that duty.

may be subjected to improper use by the jury. *Id.; Robinson,* 699 N.E.2d at 1149. The same standard applies regardless of whether the exhibits are sent before or during deliberations. *Thacker,* 709 N.E.2d at 6; *Robinson,* 699 N.E.2d at 1149. *But see Powell v. State,* 644 N.E.2d 855, 857–58 (Ind.1994) (reversing criminal conviction because trial court permitted jury to review testimony or specific pieces of evidence alone and unguided by court).

In *Thacker,* 709 N.E.2d at 6, the trial court allowed the jury to review tapes of the defendant's statements to police alone after deliberations had begun and after it specifically requested to see them. The supreme court employed the three factor test and concluded that all three factors supported the trial court's decision. It explained, "If the jury requests particular pieces of information, presumptively that information will aid the jury in proper consideration of the case. In the absence of any showing as to why that is not the case, the first factor is satisfied." *Id.* Next, the court found no evidence of prejudice because the trial court gave the jury all of the admitted exhibits, not only those it requested, in order to avoid any emphasis, real or perceived, on a particular exhibit. Finally, the court observed that the trial court did not give the unadmitted transcripts of the tapes to the jury, but sent only admitted exhibits. Accordingly, the court concluded that the trial court did not abuse its discretion in sending all of the admitted exhibits to the jury. *Id.*

■ Here, as in *Thacker,* we presume that the first factor, that Exhibit 7 aided the jury in its proper consideration of the case, is satisfied because there is no evidence to the contrary. However, the trial court sent only the requested exhibit to the jury room, rather than all of the exhibits. This may have allowed the jury to place emphasis on this exhibit and thereby unduly prejudiced Goodrich. Thus, the second factor weighs in favor of finding an abuse of discretion. Finally, we conclude that the exhibit in question was not subject to improper use and note that Goodrich offers no argument to the contrary.

■ Even if we were to find that the trial court abused its discretion, any error would be harmless. Ind. Trial Rule 61 states that: "No error ... in any ruling or order in anything done or omitted by the court or by any of the parties is ground for ... reversal on appeal, unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties."

We have reviewed the exhibit at issue, a sketch of the accident site containing various measurements, including a measurement of the distance between the electric line and the closest point on the home Goodrich was roofing at the time of his accident. In the absence of any demonstration to the contrary, we find that the jury's review of this exhibit did not affect Goodrich's substantial rights and constitutes, at most, harmless error.

Affirmed.

SHARPNACK, J., concurs.

SULLIVAN, J., concurs with separate opinion.

SULLIVAN, Judge, concurring.

Here, I believe AEC owed a duty of reasonable care to Goodrich because of the relationship between the two. AEC was well aware of the necessity of making maintenance repairs and replacements to residential roofs in the area and that roofing contractors and their employees would be in proximity to power lines. Certainly,

foreseeability of injury to such workmen existed here. Therefore, although members of the general public, i.e., those traveling upon the land, were not at risk because the lines were located twenty-three feet above the ground, persons such as Goodrich, by reason of his employment, could be expected to be at risk by uninsulated lines located less than eight feet from where Goodrich, or others like him, would be expected to be working.

Be that as it may, this issue was not decided as a matter of law by the partial summary judgment. Rather this very issue was submitted to the jury. *See Brown v. N. Indiana Pub. Serv. Co.*, 496 N.E.2d 794 (Ind.Ct.App.1986) (summary judgment reversed), *trans. denied.*

Presumably, the jury had in mind a duty on the part of AEP to exercise reasonable care as to the workmen like Goodrich. The fact remains that the jury found no fault on the part of AEP.

It is difficult to conceive that under the circumstances here present any reasonable jury would fail to find that there was a *breach* of the duty of reasonable care. Placing uninsulated power lines within eight feet of a roof upon which the residence owner or workmen would foreseeably and not rarely engage in such activities as gutter cleaning and maintenance, window washing, chimney cleaning, and, as here, roof drip-edge replacement or repair would clearly seem to breach the duty. This is particularly so in light of the acknowledged fact that the lines were locat-

ed closer to the house than the ten-foot distance within which such workmen were, by OSHA regulation, precluded from operating. To the extent that *Spudich v. N. Indiana Pub. Serv. Co.*, 745 N.E.2d 281 (Ind.Ct.App.2001), *trans. denied,* may be read as contrary to my position, I would decline to follow it.

It is perhaps this very fact, i.e. violation by North Central Roofing of the ten-foot regulation, which led the jury to conclude that North Central was ninety percent at fault, Goodrich himself as an employee of North Central was ten percent at fault, and that AEP was not at fault—at least to the extent that any such fault was a proximate cause of Goodrich's injury.

Accordingly, although I cannot help but conclude that AEP owed a duty of reasonable care to Goodrich and that AEP breached that duty by the manner and location of its uninsulated power lines, I nevertheless also conclude that the jury was within its discretion in concluding that AEP was not liable for Goodrich's injuries. For this reason I concur in affirmance of the grant of partial summary judgment and in the judgment entered upon the jury verdict.