Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Dec 17 2013, 9:38 am

CLERK
of the supreme court,
court of appeals and
tax court

APPELLANT PRO SE:

**KELLY S. CRAIG**
Bunker Hill, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ANGELA N. SANCHEZ**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

KELLY S. CRAIG,                          )
                                         )
    Appellant-Defendant,                 )
                                         )
        vs.                        )     No. 63A05-1209-PC-494
                                         )
STATE OF INDIANA,                        )
                                         )
    Appellee-Plaintiff.                  )

APPEAL FROM THE PIKE CIRCUIT COURT
The Honorable Sherry B. Gregg Gilmore, Special Judge
Cause No. 63C01-1003-PC-95

**December 17, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**ROBB, Chief Judge**

<u>Case Summary and Issues</u>

Kelly Craig, *pro se*, appeals the post-conviction court's denial of his petition for post-conviction relief. Craig raises the following issues for our review: (1) whether the post-conviction court improperly considered deposition testimony from Brian Powell, one of Craig's accomplices; and (2) whether the post-conviction court erred by denying Craig's post-conviction relief petition, which was based upon a claim of ineffective assistance of counsel.[1] Concluding the post-conviction court properly considered Powell's deposition and that Craig did not receive ineffective assistance of counsel, we affirm.

<u>Facts and Procedural History</u>

Many of the facts surrounding Craig's underlying conviction were set out by this court in a memorandum decision on direct appeal:

> On December 9, 1995, Craig, Brian Powell, and Leon Jones drove to a McDonald's where they met Shannon Wentzel, with whom Craig had a previous relationship. Craig asked Powell if they could give Wentzel a ride home. Powell agreed and the group eventually left McDonald's. Craig invited Wentzel to hang around with them until she had to go home, and she agreed. The group went "four wheeling" through rural areas in Pike County. During this trip, Jones told Wentzel that he was going to have sex with her and she responded "no."
>
> The group eventually stopped along a road so that Powell could urinate, and everyone exited the truck. When Powell returned to the group, Jones struck Wentzel in the head. Jones then started kicking her, and Craig joined in the attack. Jones then struck her with a beer bottle. Jones then had vaginal and anal intercourse with her and then ordered Powell to have sex with her. Powell then had anal sex with her. Jones told Craig that it was his turn, and Craig pulled down his pants and attempted to have intercourse with her. All three men then kicked her. Jones then got into the

---

[1] Craig also raises the issue of whether the remainder of his plea agreement would stand in the event that his conviction for attempted rape was vacated. However, because we conclude that Craig has failed to prove he received ineffective assistance of counsel and his convictions stand, we need not address whether Craig could enjoy the benefit of his plea agreement had it been partially vacated.

2

truck and ran over her ten to fifteen times. Powell and Craig then helped Jones put her into the bed of the truck.

While Powell was driving, Craig and Jones noticed that Wentzel was moving and Jones said, "the bitch ain't dead yet." Powell pulled over and Jones took her out of the truck. Craig and Jones then kicked her and stabbed her with a screwdriver. Craig told Jones that she still was not dead. Jones then got into the truck and ran over her again approximately twenty times. After Jones decided that Wentzel was dead, he and Powell dragged her body to the edge of the woods. [Wentzel] died from the combination of her injuries.

Craig v. State, No. 63A05-9803-CR-177, slip op. at 2-3 (Ind. Ct. App. Nov. 9, 1998) (citation omitted). The State charged Craig with murder, a felony; rape, criminal deviate conduct, and aiding another person to commit the crime of murder, all Class A felonies; and two counts seeking a sentence of life imprisonment without parole.

Attorney Russell Mahoney was appointed to represent Craig in December 1995 and continued to represent him for approximately two years—from the time charges were filed through Craig's guilty plea and direct appeal. Mahoney passed away prior to Craig's petition for post-conviction relief, but his son Brian Mahoney, who is an attorney and practiced with his father, was familiar with the case and testified at the post-conviction hearing regarding Mahoney's representation of Craig. Over the course of his representation, Mahoney billed approximately 250 attorney hours of work on the case. Mahoney filed a number of motions on Craig's behalf, obtained a psychological evaluation, and retained a sentencing consultant.

Prior to Craig's guilty plea, confessions had been given to the police[2] and both Jones and Powell, Craig's accomplices, had pled guilty and agreed to testify against Craig as a condition of their plea agreements. Given those circumstances, the appalling

___

[2] At the post-conviction hearing, Brian Mahoney made reference to "confessions"—separate from Powell and Jones's guilty pleas—as a factor in choosing to seek a plea agreement. Tr. at 78. However, the record is unclear as to whose confessions he was referring.

nature of the crime, and Craig's previous relationship with the victim, Mahoney believed that Craig would be found guilty and sentenced to life without parole if he had decided to take the case to trial. Thus, Mahoney advised Craig that the best strategy was to negotiate a plea in hopes of obtaining the lowest possible sentence.

Multiple plea offers were discussed as a result of negotiations between Mahoney and the prosecuting attorney, all of which required Craig to plead guilty to two charges, one related to the murder and one related to the rape or attempted rape. The prosecutor would not consider a plea to only one charge unless it involved a life sentence, and the prosecutor intended to pursue a sentence of life without parole if the matter proceeded to trial. In October 1997, Craig entered into a written plea agreement whereby he agreed to plead guilty to aiding another person to commit the crime of murder, a Class A felony, and attempted rape, a Class B felony, and the State agreed to amend the charges accordingly and dismiss the remaining charges. The plea agreement left sentencing open to the trial court's discretion following a hearing, and the State further agreed to recommend that Craig's placement in the Indiana Department of Correction should be in a different facility than Jones and Powell.

At the plea hearing, Craig affirmed that he understood the nature of the charges against him and that he intended to plead guilty to those charges. Despite Craig's statement that he understood and did not need the statutes read to him, the trial court read the statute defining attempt on two separate occasions: "A person attempts to commit a crime when acting with the culpability required for commission of the crime, he engages

4

in conduct that constitutes a substantial step toward commission of the crime."[3]  Volume of Exhibits ("Vol. Ex.") at 168-69, 178.  Craig confirmed that he understood the nature of the charges and that at trial the State would be required to prove every element beyond a reasonable doubt.  The factual basis for the attempted rape charge was read to Craig; it provided:

> "[O]n December the 9th, 1995 in Pike County, State of Indiana, that you did knowingly attempt to have sexual intercourse with a person of the opposite sex, that person being Shannon Lynn Wentzel, when such person was compelled by imminent threat of force, that threat being that Shannon Lynn Wentzel would be shot with a gun if she did not consent to intercourse."

Vol. Ex. at 186.  Craig admitted that this was true and he was guilty of attempted rape.  In further support of the State's factual basis, the State offered a deposition of Powell taken by Mahoney, which was admitted into evidence without objection.  Powell's deposition testimony described the crimes in detail and essentially characterized Craig as a willing participant throughout the commission of the crimes.  Specific to the rape, Powell's testimony was that he witnessed Craig undo his pants, climb on top of the victim, and "saw his bare ass moving, up and down."  Vol. Ex. at 247.  The trial court found that Craig understood the charges, there was a sufficient factual basis to support them, and Craig's guilty plea was freely and voluntarily given.

Craig's version of the attempted rape is recounted in the presentence investigation report, which was submitted to the court at the sentencing hearing.  Relevantly, the report stated:

---

[3] The trial court also read the statute defining rape:  "A person who knowingly or intentionally has sexual intercourse with a member of the opposite sex when the other person is compelled by force or imminent threat of force . . . ."  Vol. Ex. at 178.

5

[Jones] said "it's your turn Kelly."  Kelly said "no, I'm not."  Kelly believes that [Jones] then struck him on his head.  Kelly stated that he then laid on top of her but didn't have an erection or penetration. . . .  While Kelly was on top of Shannon, [Jones and Powell] got into the truck.  They asked Kelly if he was done.  He told them he was.

Vol. Ex. at 30.

A sentencing hearing was held in October 1997.  Mahoney prepared a sentencing memorandum and argued for a mitigated sentence.  Relevant to Craig's arguments for post-conviction relief, Mahoney wrote:

Kelly Craig has also pled guilty to attempted rape, even though he has always maintained that upon Leon Jones' orders, he only pretended to have sex with Shannon Wentzel.  He did lie down on top of her, with his pants and shorts down, and Brian Powell states in his deposition that he saw Kelly Craig's bare buttocks.  However, Kelly Craig says he did not have an erection, and he did not penetrate the sex organ of Shannon Wentzel.  Nonetheless, these acts constitute a substantial step toward the crime of rape, and therefore Kelly Craig is guilty of attempted rape.  Legally, the attempt to commit a crime constitutes the same grade of crime as the crime attempted.  However, lying on top of Shannon Wentzel, without an erection, without penetration, does not warrant the same sentence for rape as should be meted out to a defendant who, without being ordered, actually penetrates a victim and satisfies his sexual desire.

Vol. Ex. at 69-70.  The trial court sentenced Craig to ten years for attempted rape and forty-five years for aiding another person to commit murder, all executed and to be served consecutively for an aggregate sentence of fifty-five years imprisonment.  This court affirmed Craig's sentence on direct appeal.  Craig, No. 63A05-9803-CR-177, slip op. at 2.

In February 2000, Craig filed a petition for post-conviction relief but later withdrew that petition without prejudice.  And in March 2010, Craig filed the petition for post-conviction relief which is the subject of this appeal.  The sole grounds for relief sought in Craig's petition were claims of ineffective assistance of counsel.  Following a

6

hearing, the post-conviction court issued written findings of fact and conclusions of law denying post-conviction relief. Craig then filed a motion to correct error, and it was denied. Craig now brings this appeal.

## Discussion and Decision

### I. Standard of Review

A petitioner seeking post-conviction relief bears the burden of establishing grounds for relief by a preponderance of the evidence. Ind. Post-Conviction Rule 1(5). A petitioner who is denied post-conviction relief appeals from a negative judgment, which may be reversed only if "the evidence as a whole leads unerringly and unmistakably to a decision opposite that reached by the post-conviction court." Stevens v. State, 770 N.E.2d 739, 745 (Ind. 2002), cert. denied, 540 U.S. 830 (2003). We defer to the post-conviction court's factual findings, unless they are clearly erroneous. Id. at 746.

### II. Post-Conviction Court's Use of the Powell Deposition

Craig argues that the post-conviction court incorrectly relied on the Powell deposition in its findings of fact, because Craig believes it is contrary to "previously established facts" found by the trial court during sentencing. Appellant's Brief at 5. In particular, Craig points to this statement made by the trial court: "The history of this case shows to the Court that the defendant participated in the crimes under a threat of harm to himself." Vol. Ex. at 367.

As a threshold matter, Craig makes this argument as a precursor to another argument improperly raised for the first time on appeal. Namely, he asserts that there was not a sufficient factual basis for his plea. In addition to lacking any discernable merit, that issue has been forfeited for appeal because Craig failed to assert such a claim

7

in his petition for post-conviction relief.[4]  P-C.R. 1(8) ("All grounds for relief available to a petitioner under this rule must be raised in his original petition."); see also Koons v. State, 771 N.E.2d 685, 691 (Ind. Ct. App. 2002) ("Issues not raised in the petition for post-conviction relief may not be raised for the first time on post-conviction appeal."), trans. denied.

Regardless, the post-conviction court's references to the Powell deposition merely demonstrate that Craig's version of events is contradicted by other evidence; this evidentiary dispute is relevant to the issue actually preserved for appeal:  ineffective assistance of counsel.[5]  The deposition was admitted into evidence without objection, and the post-conviction court's findings are supported by the evidence.  Craig presents us with no authority prohibiting the post-conviction court from recognizing that evidence. Therefore, the post-conviction court's findings are not clearly erroneous.

### III. Ineffective Assistance of Counsel

Craig contends that he received ineffective assistance of trial counsel and that the post-conviction court erred in denying his petition for post-conviction relief.  Craig asserts Mahoney was ineffective for a number of reasons, including:  (1) failure to object to the charging information; (2) failure to adequately advise Craig as to the elements of attempted rape before his plea; and (3) failure to advise Craig regarding affirmative defenses of abandonment and duress.

---

[4] On reply, Craig concedes that his Appellant's Brief raises arguments not raised in his post-conviction relief petition.  However, he asserts that these claims were separately decided by the post-conviction court and should be addressed on appeal.  Suffice it to say, Craig apparently misreads the post-conviction court's order denying post-conviction relief, as it was decided entirely on the backdrop of ineffective assistance of counsel.

[5] The evidentiary dispute—and by extension, the strength of the State's case—is relevant to the ineffective assistance inquiry to the extent that the prejudice prong asks whether, but for any alleged deficient performance by counsel, Craig would have likely forgone a guilty plea and proceeded to trial.

8

The Sixth Amendment's "right to counsel is the right to the effective assistance of counsel." Strickland v. Washington, 466 U.S. 668, 686 (1984) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)). To establish a claim of ineffective assistance of counsel, a convicted defendant must show (1) that counsel's performance was deficient such that it fell below an objective standard of reasonableness based on prevailing professional norms and (2) the defendant was prejudiced by counsel's deficient performance. Id. at 687. When considering whether counsel's performance was deficient, the reviewing court begins with a "strong presumption" that counsel's performance was reasonable. Id. at 689. A defendant is prejudiced if "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

When a defendant contests his guilty plea based on claims of ineffective assistance of counsel, we apply the same two-part test from Strickland discussed above. Hill v. Lockhart, 474 U.S. 52, 58-59 (1985). The first part, regarding counsel's performance, is largely the same. Id. The prejudice requirement, however, "focuses on whether counsel's constitutionally ineffective performance affected the outcome of the plea process. In other words, . . . the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Id. at 59.

The two prongs of the Strickland test—performance and prejudice—are independent inquiries, and both prongs need not be addressed if the defendant makes an insufficient showing as to one of them. 466 U.S. at 697. For instance, "[i]f it is easier to

9

dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed" without consideration of whether counsel's performance was deficient. Id.

### A. The Charging Information

Craig makes two allegations of ineffective assistance of counsel based on the premise that Mahoney did not understand the law regarding attempted rape. The first of these two arguments is that Mahoney failed to object to a flawed charging information which "improperly attached the culpability of the attempted rape to the substantial step instead of the underlying offense of rape . . . ." Appellant's Br. at 14. Frankly, this argument is a nonstarter. The charge plainly stated that Craig "did knowingly attempt to have sexual intercourse with a person of the opposite sex, that person being Shannon Lynn Wentzel, when such person was compelled by imminent threat of force . . . ." Vol. Ex. at 186. The charge alleged that Craig knowingly attempted to rape Wentzel, and there is not so much as a mention of the substantial step to which Craig claims the charge improperly attached the culpability requirement. Mahoney's performance as counsel was not deficient for failing to object to the charging information.

### B. Elements of Attempted Rape and Counsel's Advice to Plead Guilty

Second, Craig contends that Mahoney incorrectly advised him regarding the elements of attempted rape, which led to his decision to plead guilty. Craig maintains throughout his briefing that he only pretended to rape his victim and thus did not have the necessary culpability to commit the underlying offense of rape. He asserts that Mahoney informed him that he was guilty despite a lack of culpability and advised him to plead guilty.

In support of his contention that Mahoney misunderstood the elements of attempted rape, Craig refers to a paragraph of the sentencing memorandum written by Mahoney and quoted above. Although we believe that—when read in context—the sentencing memorandum does not support Craig's claim of deficient performance, this issue is more easily disposed of on the grounds that Craig was not prejudiced by any alleged incorrect advice given by Mahoney with respect to the elements of attempted rape.

First, any claim that Craig would have forgone a guilty plea and proceeded to trial upon a correct advisement of the culpability requirement of attempted rape is belied by the fact that he did receive such an advisement at the plea hearing and still chose to plead guilty. At his plea hearing, the trial court read Craig the definition of attempt: "A person attempts to commit a crime when acting with the culpability required for commission of the crime, he engages in conduct that constitutes a substantial step toward commission of the crime." Vol. Ex. at 168-69, 178. This definition clearly and correctly states that a person is guilty of attempt when acting with the culpability to commit the underlying crime—in this case, rape. Craig confirmed that he understood the nature of the charge and that at trial the State would be required to prove the intent element beyond a reasonable doubt.

Even if we ignored the fact that Craig was correctly advised in open court and intelligently pled guilty thereafter, we would not conclude that there is a reasonable probability that Craig would have insisted on going to trial. As the State points out, there was ample evidence against Craig that would have supported a conviction of rape or attempted rape. Both Jones and Powell agreed to testify against Craig. And Powell's

testimony would have been that Craig was a willing participant and that he witnessed Craig undo his pants, climb on top of the victim, and "saw his bare ass moving, up and down." Vol. Ex. at 247. Their testimony would have been sufficient for a jury to find Craig guilty of rape or attempted rape. The jury would have been under no obligation to credit Craig's version of events. Robinson v. State, 699 N.E.2d 1146, 1148 (Ind. 1998) ("The jury [is] in the best position to assess the credibility of witnesses and could assign little—or no—weight to [a defendant's] version. It is the jury's exclusive prerogative to weigh conflicting evidence.").

Moreover, Craig's plea agreement was extremely favorable. By pleading guilty, Craig evaded the possibility of life without parole, which Mahoney justifiably believed was a strong likelihood if Craig had gone to trial. Craig has not demonstrated a reasonable probability he would have forgone his plea agreement in exchange for a trial—the likely outcome of which was a jury finding him guilty of rape and murder and a resulting sentence of life imprisonment.

### C. Affirmative Defenses

Finally, Craig claims that Mahoney was ineffective for failing to advise him regarding the affirmative defenses of duress and abandonment. However, Craig has not met his burden of establishing that Mahoney was deficient for declining to advise Craig of these defenses.

First, Mahoney did not perform deficiently by failing to advise Craig as to the defense of duress. The law is clear that the defense of duress does not apply to offenses committed against the person, including rape and attempted rape. Ind. Code § 35-41-3-8.

12

The post-conviction court correctly concluded that Craig could not have defended against a charge of rape or attempted rape on that basis.

Second, Mahoney did not perform deficiently by not advising Craig as to the defense of abandonment. Abandonment "is a defense that the person who engaged in the prohibited conduct voluntarily abandoned his effort to commit the underlying crime and voluntarily prevented its commission." Ind. Code § 35-41-3-10. Outside of Craig's self-serving version of events, he identifies no evidence that would support a theory of abandonment. Indeed, all other evidence seems to point toward Craig's guilt. "Counsel is afforded considerable discretion in choosing strategy and tactics, and we will accord that decision deference. A strong presumption arises that counsel rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." State v. Holmes, 728 N.E.2d 164, 172 (Ind. 2000) (citation omitted), cert. denied, 532 U.S. 1067 (2001). Given the State's evidence against Craig and the dearth of evidence supporting a defense of abandonment, it would have been reasonable to believe pursuit of a guilty plea was a better strategy than proceeding to trial with a weak defense.

We hold that Mahoney's failure to advise Craig regarding the defenses of duress and abandonment was not ineffective assistance of counsel.

### Conclusion

Concluding the post-conviction court did not err by considering Powell's deposition and that it correctly denied Craig's petition for post-conviction relief, we affirm.

Affirmed.

BARNES, J., and BROWN, J., concur.

13